McCray *et al. v.* Humes.

No. 13,139.

McCray et al. *v.* Humes.

Partition.—*Statute of Limitations.—Pleading.*—The fifteen, and not the twenty years statute of limitations is applicable to a suit in partition, and where an answer sets out the facts showing that the suit was not commenced within fifteen years from the time the right of action accrued, it is good, although it is alleged as a conclusion that the action did not accrue within twenty years.

Same.—*Adverse Possession.—Erroneous Legal Advice.*—Where the owner of an entire estate, acting under erroneous legal advice, asserts title to and conveys only an undivided half thereof, yields exclusive possession to the grantee, and voluntarily leaves other persons, who rely in good faith upon the same advice, in possession of the remaining half under an adverse claim of title, and the adverse possession so held by the grantee and the other persons is continued for more than fifteen years, a suit for partition will be barred.

Trial.—*Holding Cause Under Advisement.—Delay.—Presumption.*—When a judge holds a cause under advisement for more than sixty days without objection, the presumption will be indulged that he had a lawful excuse for the delay.

Special Finding.—*Signing.—Practice.*—Where the record shows that the name signed to a special finding is not the name of the judge who presided when the finding was filed, the finding is defective, and, if not made a part of the record by an order of court or by a bill of exceptions, it will be considered only as a general finding.

From the Clinton Circuit Court.

*J. V. Kent* and *J. W. Merritt,* for appellants.

*T. H. Palmer* and *W. F. Palmer,* for appellee.

Niblack, C. J.—This was a suit for partition, commenced on the 7th day of March, 1881, in which William A. McCray and twelve others were plaintiffs, and John D. Humes was defendant.

The complaint alleged that the plaintiffs were the owners of one undivided half of two particularly described tracts of land in the county of Clinton, and that the defendant was the owner of the other undivided half of the same lands.

The pleadings were very voluminous. Various questions were reserved,or sought to be reserved, upon certain paragraphs of answer, upon a cross-complaint and upon other pleadings, but as the controlling questions involved in this appeal are nearly all more conveniently presented by a special finding of the facts made by the circuit court, we will not formally consider any of the questions reserved upon the pleadings, except upon the sufficiency of the second paragraph of the answer to the complaint,to which our attention has been especially directed. It is sufficient, at the present hearing, to state that the defendant, amongst other things, answered : *First*. In general denial. *Second*. That in the year 1856 he and his only brother and sisters, and one Mary Humes, the ancestor of the plaintiffs, through whom they claim title, were in possession of the real estate described in the complaint as tenants in common ; that the said Mary Humes then claimed to be the owner of one undivided half of such real estate under the will of one John McCray, deceased, and that he, the defendant, and his said brother and sisters, claimed to be the owners of the other undivided half by inheritance from their deceased father, Cornelius Humes; that on the 3d day of September, 1856, he, the defendant, purchased from the said Mary Humes all her interest in such real estate, and received from her a conveyance for the same ; that he afterwards, at the instance and request of the said Mary Humes, purchased the interests of his said brother and sisters in the same real estate; that on said 3d day of September, 1856, he, the defendant, took exclusive possession of the real estate in controversy as against the said Mary Humes, and continued to hold the same adversely to her, paying the taxes and making valuable improvements thereon, until the 29th day of May, 1867, when she died ; that he had ever since continued to hold adverse and exclusive possession as against the plaintiffs, under color of title. Wherefore the cause of action did not accrue within twenty years next before the bringing of this suit.

A demurrer being first overruled to this second paragraph of answer, issue was joined upon it.

In its special finding the circuit court found the facts substantially as follows:

That on the 23d day of February, 1849, one John McCray was the owner in fee of the lands of which partition was demanded; that Mary Humes, named in the pleadings, was the sister of the said John McCray, and was then the wife of Cornelius Humes, the father of the defendant; that the said John McCray, on said 23d day of February, 1849, executed his last will, devising said real estate to the said Mary Humes and Cornelius Humes in the following words: "I give and bequeath to my sister Mary Humes and Cornelius Humes, her husband, all my estate, both real and personal;" that after the death of the said John McCray, that is to say, on the 5th day of March, 1849, his said last will was duly admitted to probate in said county of Clinton; that Cornelius Humes died intestate on the 14th day of March, 1852; that Mary Humes, who survived her husband, was the second wife of Cornelius Humes, by whom he had no children; that Cornelius Humes left as his children, and only children, by a former marriage, the defendant, John D. Humes, William Humes, Frances P. Byers, Eleanor Shepherd, Caroline Cochran and Sarah Thrush; that after the death of Cornelius Humes, Mary Humes, as his widow, sought legal advice as to her interest in the real estate so devised to her and her husband by her deceased brother, John McCray, as stated, and was thereupon advised by counsel that she had become and was the owner of one undivided half of such real estate, and no more, and that the said children of Cornelius Humes by his former marriage had become and were the owners of the other undivided half; that the said Mary Humes, relying upon the advice so given her, and believing that the same was in accordance with the law as applicable to the existing facts, asserted title thereafter to only one undivided half of the real estate in question; that

the children of Cornelius Humes, above named, relying in like manner upon the advice given to their said step-mother, thereafter asserted title, in good faith, to the other undivided half of such real estate ; that this claim of title by her said step-children, was, in like good faith, fully recognized and assented to by the said Mary Humes; that on the 3d day of September, 1856, Mary Humes entered into a contract with the defendant, John D. Humes, for the sale of her undivided half of said real estate, embracing her supposed entire interest therein, in consideration of the sum of one thousand dollars, and upon the further consideration that he, the said John D. Humes, would support and maintain her during the rest of her life, and accordingly on that day executed a conveyance to him for such undivided one-half of the same ; that the said John D. Humes paid said sum of one thousand dollars to the said Mary Humes and supported her the rest of her life ; that immediately after the execution of such conveyance the said John D. Humes took exclusive possession and control of the real estate specified in the complaint, and asserted title to one undivided seven-twelfths thereof, the said Mary Humes thereafter disclaiming any further interest in such real estate ; that the said Mary Humes, still recognizing and admitting the children of her late husband as the owners of one undivided half of such real estate, advised the said John D. Humes to purchase their interests in the same ; that, acting in good faith upon such advice, he accordingly, between the years 1863 and 1872, purchased the interests of his brother and sisters in such real estate, and received from them conveyances therefor ; that the said John D. Humes was still in the exclusive possession and control of the real estate in dispute, having made lasting and valuable improvements thereon and having paid the taxes on the same, and having been in such exclusive possession and control since the 3d day of September, 1856, as above stated ; that all the occurrences herein set forth were known by the said Mary Humes and the

plaintiffs as they transpired; that Mary Humes died on the 29th day of May, 1867, and that the plaintiffs were her heirs and only heirs at law.

Upon the facts as thus found the circuit court stated its conclusions to be that the actings and doings of the said John D. Humes, and his brother and sisters, constituted an ouster of Mary Humes from and after the 3d day of September, 1856, at which time the statute of limitations began to run as against her; that at her death the statute continued to run against the plaintiffs; that in consequence the cause of action was, before the commencement of this suit, barred by the twenty years statute of limitations.

It was held in the case of *Nutter* v. *Hawkins*, 93 Ind. 260, that it is the fifteen years statute of limitations which is applicable to a suit in partition, and it is contended that, as the second paragraph of answer in this case set up the twenty years statute of limitations as a defence to the demand for partition, the demurrer ought to have been sustained to that paragraph, relying upon the case referred to, as necessarily leading to that conclusion. In that case the fifteen years statute was pleaded in one paragraph of the answer, which was held to be sufficient upon demurrer, and the twenty years statute in another paragraph, to which a demurrer was sustained. In reviewing that branch of the case, this court came to the conclusion that no error was committed in sustaining the demurrer to the last named paragraph, and in any view the conclusion then reached was substantially correct, as the defendant had the benefit of the fifteen years statute as a defence. Having reference, therefore, to the questions really there decided touching the statute of limitation, that case was not a parallel one with the case at bar.

Under our civil code the facts stated in a pleading determine the rights of a party as well as his remedy. If the facts make a case for a legal remedy, then a legal remedy ought to be applied. If the case made is one calling for equitable relief, then the party becomes entitled to that form of relief.

The rule that a pleading must state the facts applies as well to an answer as to a complaint. The sufficiency of an answer must be determined by the facts it contains, and not by any mere conclusions of law. 1 Works Practice, sections 342, 351, 590; *Goodall* v. *Mopley*, 45 Ind. 355.

The greater includes the less, and if, upon the facts alleged, John D. Humes had been in the adverse possession of the real estate for twenty years before the commencement of this suit, he must have been for as much as fifteen years; hence the concluding averment that the cause of action did not accrue within twenty years before the commencement of the suit, amounted to no more than an informal conclusion not affecting the substantial sufficiency of the facts from which it was drawn. The circuit court did not, consequently, err in overruling the demurrer to the paragraph of answer under consideration.

The special finding of the facts is impliedly conceded to be rightfully in the record, and we proceed upon that assumption. Under the will of John McCray, Mary Humes and her husband, Cornelius Humes, became tenants by entirety in the lands devised to them, and on the death of her husband Mary Humes became the owner of the estate in the lands as his survivor. Upon legal advice to the contrary, however, she elected to assert title to only one undivided half, and to recognize the children of her deceased husband as the owners of the other undivided half, and, consequently, as tenants in common with her in the lands. The conveyance by her to John D. Humes of one undivided half carried with it the right of possession of the estate conveyed, and the fair inference is that she was never afterwards in possession of any part of the lands, and that she never thereafter asserted any claim to the right of possession. It was, on the contrary, expressly found, in effect, that immediately after the conveyance John D. Humes took immediate and exclusive possession of the lands, adversely to Mary Humes, under a claim that he had become the owner of one undi-

McCray *et al.* *v.* Humes.

vided half by the conveyance, and that he and his brother and sisters were the owners by inheritance of the remaining half.

The possession of one person, recognized as a tenant in common with others, is the possession of all. *Bowen* v. *Preston*, 48 Ind. 367.

This exclusive possession under a claim of title would have been an ouster of Mary Humes if she had really been a tenant in common. But she was not. She had been, as has been shown, the owner of the entire estate, but on account of erroneous advice given her had declined to assert title to more than one-half. She had conveyed one undivided half, all the interest she claimed in the lands, to John D. Humes, and voluntarily left others in the possession of the remaining half under an adverse claim of title, and under circumstances which, if continued long enough, would eventually bar her right to recover such remaining half.

This was not all she did adversely to her claim of title. She afterwards, as has been seen, advised John D. Humes to purchase the claims of title asserted by his brother and sisters, upon the ground that by so doing he would acquire a complete title to all the lands; and this he did accordingly.

Herman on Estoppel, at section 955, on page 1080, says: "A mistake as to the law forms no ground for reforming a contract, yet where a party, acting under a mistake of law or of fact, does acts which mislead the adverse party, he is estopped, as well as if he was not acting under such mistake," and proceeds to give illustrations of the application of that doctrine.

In the next succeeding section he further says, that "There is a vast difference between standing by without taking measures to stop a sale and warning the purchaser, or even answering such questions as he may choose to put, and taking an active part in the transaction, or inducing him to purchase by advice or persuasion. Good faith, generally an excuse in the former case, is insufficient in the latter, for in

the latter case the owner is nearly, if not quite, in the position of a vendor, and can not rely on the innocence of his assurances as a reason why they should not be made good subsequently."

Applying these general principles to the pertinent facts found by the circuit court, there is much plausibility in the claim that, upon a general view of the facts, Mrs. Humes became estopped from asserting title to any part of the lands in suit. But the point is made that all the facts affecting the question of title were equally well known to both of the parties, and that, consequently, the mistake as to the law applicable to those facts was mutual in that sense which excludes, and to the extent of excluding, an estoppel. As, however, the judgment will have to be affirmed upon other grounds, we need not consider whether, in every view of the case, Mrs. Humes really became estopped from asserting title as against John D. Humes.

Aside from any question of estoppel, this suit was, for the reasons already stated, barred by much more than fifteen years of adverse possession before it was commenced. While, therefore, the conclusions of law drawn by the circuit court were not technically well formulated, no substantial injury was thereby inflicted on the plaintiffs, and they have hence no cause of complaint.

This cause was tried before the Hon. Thomas J. Terhune, who was then the regular judge of the Clinton Circuit Court, on the 24th and 25th days of March, 1882, and having been requested to make a special finding of the facts, the cause was taken under advisement. The special finding was not filed until the 7th day of July, 1885, and no excuse is shown for the delay.

In the meantime an act was passed constituting the 45th judicial circuit, which embraced only Clinton county, and as Judge Terhune did not reside in that county, the Hon. Allen E. Paige had become the judge of the Clinton Circuit Court. Acts of 1883, p. 58. The special finding was filed during the

June term, 1885, of that court, which the record shows was held by Judge Paige.

The particular proceedings which include the special finding purport to have been held before Judge Paige, but the finding is signed " T. J. Terhune," without any explanation of record as to why it was so signed. Counsel for the appellants assume that Judge Terhune appeared in the circuit court, and, without authority, proceeded to make and to file the special finding, and make the point that on that account, as well as because of the long delay, the special finding is void. In the first place, the assumption that Judge Terhune appeared in the circuit court on that occasion is not sustained by the record. In the next place, the seventh section of the act creating the 45th judicial circuit provided in its legal effect, that all questions at the time pending in the Clinton circuit court before Judge Terhune might thereafter be decided by him. In the third place, when a judge holds a cause under advisement for more than sixty days, without objection or question, the presumption ought to be indulged that he had a lawful excuse for the delay. R. S. 1881, section 551. No objection to either the making or the filing of the special finding seems to have been made at the time it was filed. Consequently the questions sought to be made upon the special finding are not in the record. Besides, a special finding not signed by the judge, nor made a part of the record either by an order of court or by a bill of exceptions, can not be regarded as having been made in compliance with section 551 of the civil code, and hence must be treated only as a general finding. Buskirk Prac. 205; *Conwell* v. *Clifford*, 45 Ind. 392; *Shane* v. *Lowry*, 48 Ind. 205; *Bake* v. *Smiley*, 84 Ind. 212; *McClellan* v. *Bond*, 92 Ind. 424.

As Judge Paige is made to appear as having presided in the cause when the special finding was made, his name, if any one, ought to have been attached to the special finding, and, upon its face, it is, in that respect, defective in not having been signed by him. Not having been otherwise made

a part of the record, the special finding can not be considered as any thing more than a general finding in favor of the appellee. As the evidence is also not in the record, there is, therefore, no question before us on the merits of the cause.

The judgment is affirmed, with costs.

