Ferris v. Udell et al.

---

No. 16,728.

## FERRIS v. UDELL ET AL.

JUDGMENT.—*Signing by Trial Judge.—Presumption.—Record.— Tran-
script.*—The transcript of the record need not show that the judg-
ment appealed from was signed by the trial judge, the presumption
being in favor of such signing. The judge is only required to sign
the record of each day's proceedings once, which may include a
great number of judgments.

SPECIAL FINDING.—*Signing by Judge.— When Required.*—The law re-
quires a special finding to be signed by the judge, where it is not
made a part of the record by bill of exceptions or order of the court.

SAME.—*When Sufficiently Signed.—Signature Following Conclusions of
Law.— Venire de Novo.*—Where the conclusions of law stated im-
mediately follow the finding of facts, and the judge's signature im-
mediately follows the conclusions of law, if such signature is not a
sufficient signing of the special finding, it was a defect in matter of

form, and the remedy was by motion for a *venire de novo*, and, in the absence of such motion, the special finding and conclusions of law are sufficient to present the questions involved in them, on appeal.

NEW TRIAL.—*As of Right.—Dismissal of.—Effect on Vacated Judgment. —Restoration and Conclusiveness of.—Case Distinguished.*—The dismissal of a cause of action, after the grant of a new trial as of right, has the effect of restoring the conclusive character of the vacated judgment, against all the parties and their privies, on the ground that it was only vacated for the one purpose under the statute, viz., to allow the defeated party one more trial, if he chose to avail himself thereof. *Carmikel* v. *Cox*, 58 Ind. 133, distinguished.

JUDGMENT.—*Foreclosure of Mortgage.—Res Adjudicata.—Assignment for Benefit of Creditors.—Bankruptcy.—Purchaser Pendente Lite.—Collateral Attack.*—A, a corporation, executed a deed of assignment to R. for the benefit of its creditors, among which were certain lots. Subsequently to the assignment, A, upon petition in the United States District Court, was duly adjudged a bankrupt. R., upon order of the State court in which the assignment proceedings were pending, turned over to the assignee in bankruptcy of A all of the property rights, credits and effects of said bankrupt, but made no deed or conveyance of the lots or any of the assigned real estate to the assignee in bankruptcy. The assignee in bankruptcy sold the lots to H. At the time of the assignment by A to R., B. and S. held a judgment lien on the land of A, which, after the sale by the assignee in bankruptcy, they foreclosed and became the purchasers at the foreclosure sale, and received a certificate of purchase, one-half of which they had assigned to F., but which had not been recorded when E., a mortgagee of H., brought suit against H., B. and S. and others to foreclose his mortgage on said lots, which resulted in a judgment in favor of E.

*Held*, that a decree in a suit to foreclose a mortgage, adjudicating the titles involved, is conclusive upon the parties.

*Held*, also, that if a judgment necessarily determines a particular fact, that determination is conclusive, and requires the same fact to be determined the same way in all subsequent actions between the same parties or their privies.

*Held*, also, that E.'s foreclosure suit necessarily adjudicated two things, viz : (1) That the sale of the lots in question by the assignee in bankruptcy as against B. and S. was valid and binding; and (2) that the sheriff's sale to B. and S. on execution on their judgment was invalid against H., the purchaser at the bankrupt sale.

*Held*, also, that F., the assignee of B. and S. of one-half interest in the certificate of purchase, should be regarded as a purchaser *pendente lite*, and bound by the decree in favor of E., for such assignment

had not been recorded, as the statute provides, when E. instituted his suit, having no notice of the assignment.

*Held*, that as the court, in the foreclosure suit by E., had jurisdiction of the subject and the parties, and the adjudication was within the issues, it is conclusive against a collateral attack, even though the decree be full of errors.

SAME.—*Judicial Sale.*—*Redemption.*—*Effect on Judgment.*—*Conclusiveness of Judgment.*—The only effect of a sale on a judgment is to satisfy or pay the same, and the only effect of a redemption is to extinguish the sale (not the judgment) by making the payment in money instead of the sale. The judgment, though paid, is a complete bar, and conclusive of everything therein adjudicated.

From the Marion Circuit Court.

*W. W. Spencer, E. P. Ferris, F. J. VanVorhis* and *W. E. Niblack,* for appellant.

*W. W. Herod, W. P. Herod* and *O. B. Jameson,* for appellees.

McCABE, J.—Suit by the appellant against the appellees Eugene Udell, Fannie Udell and Jennie M. Tompkins, to recover the possession and quiet appellant's title to lots 15, 16, 17 and 18, in block 19, in North Indianapolis, Marion county, Indiana.

The complaint was in a single paragraph, and the issue was formed thereon by separate answers of a general denial by each of the appellees.

A trial resulted in a special finding by the court, on which it stated its conclusion of law, to which appellant excepted, after which the court rendered judgment in accordance with the conclusion of law, for the appellees. The conclusion of law is assigned for error.

The substance of the special finding is, that on the 3d day of December, 1866, the Indianapolis Wagon and Agricultural Works was a manufacturing corporation duly organized under the laws of Indiana, located and doing business in Marion county, Indiana, with a capital stock of $100,000, in shares of $50 each, whose cor-

porate existence was fixed at fifty years; that on October 9, 1873, Thomas F. Ryan and others, then in possession of the premises, conveyed to said Indianapolis Wagon and Agricultural Works, by warranty deed, a large number of lots, among which were those already described, and the deed was recorded May 7, 1874, in the recorder's office of said county.

On October 19, 1876, Robert Browning and George W. Sloan recovered judgment in the superior court of said county against said wagon and agricultural works, for $479.61 and costs, without relief, etc.; that on November 16, 1876, said company being in embarrassed and failing circumstances, made an assignment for the benefit of all its creditors, and, by deed, conveyed all its property, including the lots in question, to Eli F. Ritter, in trust for the benefit of such creditors, which deed of assignment was duly recorded in the office of the recorder of said county, November 24, 1876.

On the 1st day of December, 1876, said Ritter filed a copy of said assignment in the office of the clerk of the Marion Circuit Court, together with his oath for the faithful discharge of his duties, and that the property assigned had been actually delivered into his possession, and that the probable value thereof was $7,000.

He filed his bond, took possession of the property, both real and personal, and gave notice of his appointment, and on January 16, 1877, he filed in said clerk's office an inventory and appraisement of all said property. He continued to execute the trust until the 19th day of April, 1877, when he made a report that said wagon and agricultural works had, on March 30, 1877, filed in the district court of the United States for the district of Indiana a voluntary petition in bankruptcy, and was thereupon duly adjudged, on the 6th day of April, 1877, a bankrupt by said court, and further reporting in detail

Ferris v. Udell et al.

items of collections and expenditures, showing a balance
in his hands of cash of $393.05, which at his request the
court allowed him to retain for his services, and he
asked the court to allow him to turn over to the assignee
in bankruptcy of said company all other assets then re-
maining in his hands, and that he be discharged from
any further trust or liability, which request the court
granted, and "adjudged the trust closed."

The special finding further shows that the facts thus
reported as to the proceedings in bankruptcy were true.
Said trustee, Ritter, in compliance with said order, im-
mediately turned over and transferred unto Henry C.
Adams, assignee in bankruptcy of said wagon and agri-
cultural works all the property-rights, credits and effects
of said bankrupt corporation, but made no deed or con-
veyance of the lots in controversy here or any of the as-
signed real estate to said assignee in bankruptcy. Said
Ritter from that time ceased to act as such trustee. The
schedule filed in said bankrupt procedings included,
among other real estate, the lots mentioned and described
above; that on April 21, 1877, John W. Ray, register in
bankruptcy, did convey and assign to said Henry C.
Adams, assignee, all the estate, real and personal, of the
said Indianapolis Wagon and Agricultural Works, in-
cluding all the property, of whatever kind, of which said
bankrupt was possessed, or in which it was interested on
the 30th day of March, 1877, excepting such property as
is exempt from the operation of the assignment by the
provisions of the 14th section of the bankrupt act; that
on the 18th day of June, 1878, said Browning & Sloan
made proof of their said judgment debt against said
bankrupt before the proper register in bankruptcy, and
said register admitted and allowed said debt, and he ad-
mitted and allowed said Browning & Sloan, as creditors
therefor, the sum of $516. 27, being the principal and

interest of said judgment; that on a petition filed by the assignee in bankruptcy on April 12, 1879, in said district court, asking an order to sell certain real estate, including the lots in suit, which petition stated that said real estate was incumbered by judgment and taxes, and asking to sell subject to incumbrances, the court made an order of sale in accordance with the prayer of the petition.   On the 22d of May, 1879, said assignee reported to said court the sale of the lots in controversy, among others, after advertisement, subject to all incumbrances, to Henry G. Hanneman for $2, which sale was approved and confirmed by the court, and said assignee was ordered to make said purchaser a deed conveying to said purchaser said bankrupt's interest in said lots. Said Henry C. Adams, as assignee as aforesaid, executed, acknowledged, and delivered unto one Charles B. Hitchcock a deed of conveyance of said lots so reported as sold to said Henry G. Hanneman; which deed bears date the 21st day of May, 1879, and was recorded in the recorder's office of Marion county, Indiana, on the 18th day of July, 1882.   The consideration recited in said deed was $2.   The interest conveyed, as expressed in the deed, was ''all the right, title and interest of said bankrupt'' in the lots, describing them; that on August 12, 1882, Charles B. Hitchcock and wife mortgaged to William H. English all the lots here involved and other real estate to secure a loan of $800, interest and attorney's fees, and the mortgage was recorded in the said recorder's office, August 17, 1882; that on December 26, 1885, by order of the judgment plaintiffs, an execution was issued on the judgment in favor of Browning & Sloan against said Indianapolis Wagon and Agricultural Works, which execution was received by the sheriff of said Marion county December 26, 1885, and on that day levied on the lots in question.   After legal notice said sheriff did, on

January 23, 1886, at the door of the court house in said county, between the hours prescribed by law, legally offer said lots for sale, and said Browning and Sloan bid therefor the sum of $300, and, no person bidding more, the same was openly struck off and sold to them, and said purchasers paid the costs and receipted the balance of their bid on the execution as so much paid thereon, and said sheriff executed to said purchasers a certificate of sale of said real estate, and filed a duplicate thereof in the clerk's office in said Marion county. A duplicate of said certificate was recorded in the *lis pendens* record in said clerk's office January 23, 1886; that on the same day said Robert Browning and George W. Sloan, by indorsement in writing, duly acknowledged upon said certificate, reciting the same, for a valuable consideration, assigned to Edwin P. Ferris the undivided one-half interest in said sheriff's certificate, and on February 1, 1887, George W. Sloan assigned his remaining interest in said certificate to Robert Browning, duly acknowledged and indorsed thereon, and on that day, February 1, 1887, both of said assignments were duly recorded in the *lis pendens* record, at the place aforesaid; and on February 2, 1887, the sheriff of said county, on presentation of said certificate, executed a deed to said Browning and Ferris for said lots, which deed was duly recorded in the recorder's office of said county, on November 16, 1887; that on July 27, 1886, William H. English commenced a suit in the superior court of said county for the foreclosure of the mortgage executed to him, as aforesaid, by Charles B. Hitchcock and wife; the defendants to said complaint were said Hitchcock and wife, the Indianapolis Wagon and Agricultural Works, Henry G. Hanneman and wife, Eli F. Ritter, trustee, the Berkshire Life Insurance Company, Robert Browning, George W. Sloan,

and many other defendants.   Edwin P. Ferris was not
a party to that suit.   The complaint contained all the-
averments necessary to entitle the plaintiff therein to a.
judgment against said Charles B. Hitchcock upon said
notes, and a decree of foreclosure against all the defend-
ants and a sale of the mortgaged premises.

It was also alleged in the complaint, that on February
10, 1886, at a public sale of real estate by the treasurer
of said Marion county, for taxes, said William H. English
purchased said several mortgaged lots, and that said sale
for taxes was irregular and invalid, for the reason that.
said Charles B. Hitchcock, the owner of said mortgaged
lots, had personal property out of which said taxes might.
have been made, but that the amount of said taxes con-
stituted valid liens on said lots.

It was further alleged in said complaint, that all the
defendants thereto had, or claimed to have, some inter-
est in said mortgaged property, but that if any interest.
they had or any of them had in or to said property, the
same was junior and subordinate to that of the plaintiff
William H. English, and to his said mortgage claim and
lien, and the said lien for taxes.   A personal judgment
of $3,000 was asked against said Charles B. Hitchcock,
and a foreclosure of said mortgage and tax liens against
all the defendants, and a sale of the mortgaged property,
or so much thereof as should be necessary to pay the
liens.   The defendants not hereinafter named as answer-
ing therein were all properly served with process and
were defaulted.

The Berkshire Life Insurance Company answered the-
complaint of English on September 10, 1886, by a gen-
eral denial, and, 2, that the company held two judg-
ments against Henry G. Hanneman, rendered in the-
superior court of said county, for over $5,000 each, one-
on December 17, 1878, and the other on September 11,

1879; that in February, 1877, one Frank McWhinney had purchased the lots at a tax sale, and on February 17, 1879, the auditor of said county had conveyed the lots in suit by a tax deed to said Frank McWhinney, and on December 10, 1879, McWhinney and wife had conveyed the lots to Henry G. Hanneman, and the deeds were recorded, and that their judgments were liens thereon, asking to be protected. English, on October 5, 1886, replied to this answer by a general denial; 2, that the judgments and liens mentioned were fully paid and satisfied before the commencement of that action; and 3, that the deed mentioned from McWhinney was a quitclaim, and at that time McWhinney only had a lien on the lots, but the lien, if any he had, had been assigned to Nathaniel N. Morris through whom plaintiff claims title.

On November 9, 1886, English filed a fourth paragraph of reply to said answer, averring that on August 12, 1882, Hitchcock came to him representing that he owned the lots named in the mortgage free from incumbrances, and asked the loan of money and offered to mortgage; that English had no notice that the insurance company had any lien or claim, when he loaned the money and took the mortgage from Hitchcock, which was done in good faith. He further alleged that Hanneman never owned the lots.

On November 8, 1886, Robert Browning and George W. Sloan filed a disclaimer as to all the lots except those mentioned in the complaint in this suit, and as to those lots, they stated the recovery of the judgment, the execution sale, and the purchase by them, the sheriff's certificate, and the assignment of one-half of the same to Ferris as already stated in this finding above answering only as to one-half of the certificate which they then held and owned.

On July 14, 1886, the Berkshire Life Insurance Company began a suit against Henry G. Hanneman and wife, Charles B. Hitchcock and wife, and William H. English, in the same court. The complaint stated that said insurance company had recovered the judgments already mentioned against Hanneman, and that Hanneman had conveyed the lots now in suit with others to Hitchcock to defraud Hanneman's creditors, and that Hitchcock held them for Hanneman's benefit, and that the mortgage was made to English for Hanneman's benefit, and that he got the money. Prayer that the lots be sold and the money applied to the payment of plaintiff's claim. Hitchcock and wife, and Hanneman and wife, were served with process in 'English's foreclosure, and also in the suit by the insurance company, and in each case they were defaulted. English answered the insurance company's complaint on October 5, 1886, by a general denial; 2, that the judgment had been paid; 3, that the mortgage to English was given on August 12, 1882, by Hitchcock and wife to secure notes executed to English by Hitchcock, the mortgage being recorded August 17, 1882, and that Hitchcock was in possession of the lots, and had a deed regularly executed by the former owners of the property, and the money was loaned in good faith, and without notice of Hanneman's interest, and that Hanneman was never the owner of the property, and asked to be protected.

On November 8, 1886, these two causes were, by agreement, consolidated, and on February 10, 1887, they were tried as one cause, resulting in a finding in favor of English for $953.81, the amount of his mortgage notes, and that the complaint of English was true except as there stated; that English had a lien on the lots for money paid at the tax sale as stated in his complaint; that it was a first lien on the lots, but that English was

not entitled to a foreclosure of the tax lien, but that the lien should be preserved; and that neither of the judgments set up by the Berkshire Life Insurance Company was a lien on the lots in suit.

The court further found the fact of the execution of the mortgage to English by Hitchcock and wife already mentioned on the lots in suit to secure the loan already mentioned, and that said mortgage lien is a first lien excepting the lien for taxes as aforesaid. The superior court then rendered a judgment foreclosing the mortgage against all the defendants on the lots named in the complaint in the case at bar (with other lots), and rendered a personal judgment against Charles B. Hitchcock for $963.81 and costs without relief from valuation and appraisement laws, and ordered the lots to be sold to satisfy the decree. An order of sale was afterwards duly issued, and on the 19th day of March, 1887, after proper advertisement, the sheriff sold the whole of the real estate embraced in the mortgage for a sufficient amount to satisfy the English foreclosure decree, not including the tax lien English held.

At said sale the lots now in suit were purchased by English for $62, which he paid, and received a certificate of purchase, entitling him to a deed at the expiration of one year from its date of March 19, 1887.

On March 17, 1888, the Berkshire Life Insurance Company paid to the clerk of the superior court of said county $62, and eight per cent. interest thereon, and costs of redemption for the benefit of English for the purpose of redeeming said lots from said sale as owner thereof, which redemption money was accepted and received by English, who thereupon surrendered and canceled his certificate of purchase.

That before making said redemption, and after the rendition of the English foreclosure decree, said Charles

B. Hitchcock and wife, on the 24th day of May, 1887, by deed conveyed and quitclaimed unto said Berkshire Life Insurance Company said lots as aforesaid mortgaged to said English, including the four lots now in controversy, which deed was duly recorded in the recorder's office of said county.

On January 17, 1888, said Robert Browning and wife executed, acknowledged and delivered unto Edwin P. Ferris their quitclaim deed of the undivided half of the four lots now in controversy, which deed was recorded. in the recorder's office of said county on January 18, 1888; that before the execution of the quitclaim deed last mentioned, a certain action was pending in the Morgan Circuit Court on change of venue from the superior court of Marion county, wherein said Robert Browning and Edwin P. Ferris were plaintiffs and said Berkshire Life Insurance Company and others were defendants.

The defendants in the case at bar, viz: Eugene Udell, Fannie Udell and Jennie Tompkins, were not parties to said action in the Morgan Circuit Court. They claim title under said Berkshire Life Insurance Company under deeds subsequently executed as hereinafter shown. The complaint in the Morgan county suit was in one paragraph to quiet title in the plaintiffs. Issues were joined on that complaint, trial, finding and judgment for the defendants, and that the plaintiffs take nothing; that afterwards, on May 25, 1889, the same being the 30th judicial day of the April term, 1889, of said Morgan Circuit Court, the parties appeared, and said Browning and Ferris filed their bond for the payment of costs, together with a motion for a new trial as of right under the statute, which motion was granted and the judgment vacated.

Afterwards, on December 24, 1889, being the 32d judicial day of the November term of said court, said

Ferris *v.* Udell *et al.*

Browning and Ferris filed their written dismissal of said cause, and it was thereupon dismissed by the court at the costs of the plaintiffs; that on May 10, 1889, the auditor of Marion county executed to William H. English a tax deed for the lots in controversy, with other lots, 65 in number, reciting the fact that the amount of tax paid on the 65 lots was $122.75, and that he had since paid taxes thereon to the amount of $31.56, which amounts are true, as the finding states.

This tax deed was recorded on May 10, 1889, and on that day William H. English, unmarried, quitclaimed to Charles E. Coffin, for $256.83, the lots named in the complaint, with other lots, and the deed was recorded on September 23, 1889, and on that day said Coffin and wife, for $260, quitclaimed to the Berkshire Life Insurance Company the 65 lots, including the four lots now in controversy, and the deed was recorded on September 23, 1889.

On December 2, 1889, for the sum of $500, the Berkshire Life Insurance Company, by warranty deed, conveyed to Fannie W. Udell, wife of her codefendant Eugene Udell, the lots described in the complaint herein, and the deed was recorded on December 24, 1889.

On March 31, 1889, for $350, the said Fannie W. Udell, with her husband, Eugene Udell, by a warranty deed, conveyed to defendant Jennie M. Tompkins lots 15 and 16, in block 19, named in the complaint herein, and the deed was recorded on April 3, 1891.

Upon the foregoing facts, the conclusion of law stated is "that the law is with the defendants, and that the plaintiff has no title or interest in the real estate mentioned and described in the complaint herein."

A great number of reasons are urged by appellants why the foregoing conclusion of law upon the facts found is erroneous, it being contended by them that the facts

found, for a great number of reasons, establish title in the appellants.

We are met at the threshold of the investigation of those questions, with objections from the appellees to their consideration.

The first objection is that the transcript does not show that the judgment appealed from had been signed by the trial judge. We have held that the transcript need not show the signing of the judgment by the trial judge, the presumption being in favor of such signing. *Adams* v. *Lee*, 82 Ind. 587; *Anderson* v. *Ackerman*, 88 Ind. 481; *State* v. *Hanna*, 84 Ind. 183.

The judge is not required to sign each judgment as it is rendered, but he is only required to sign the record of each day's proceedings once. That may include a great number of judgments. R. S. 1894, section 1382 (R. S. 1881, section 1330).

The trial judge's signature is no part of the record of any particular cause, but is a part of the record of the whole day's proceedings to which it is attached.

The next objection is that the special finding of facts is not signed by the judge. The conclusion of law stated immediately follows the finding of facts, and the judge's signature immediately follows the conclusion of law.

It is true, as contended by appellees' counsel, that the law requires the special finding to be signed by the judge, where, as here, it is not made a part of the record by bill of exceptions or order of the court. *Peoria Marine, etc., Co.* v. *Walser*, 22 Ind. 73; *Roberts* v. *Smith*, 34 Ind. 550; *Conwell* v. *Clifford*, 45 Ind. 392; *Service* v. *Gambrel*, 110 Ind. 349; *McCray* v. *Humes*, 116 Ind. 103; *Wallace* v. *Kirtley*, 98 Ind. 485.

It can hardly be said that the special finding is not signed at all by the judge because the statute requires him to "first state the facts in writing, and then the

conclusions of law upon them." R. S. 1894, section 560 (R. S. 1881, section 551). So he is to state both the facts and the conclusions of law in writing. Whether his signature is to immediately follow the statement of the facts, and also the conclusions of law, or whether his signature is to be attached alone to the finding of facts, and not to the conclusions of law, the statute is silent. The practice in many of the trial courts of the State of signing the special finding of facts alone by the judge has been adopted without any signature to the conclusions of law. No good reason is perceived why the signature of the judge may not follow the conclusions of law and constitute a sufficient signing by him of the special finding. At all events if that was not the right place to sign the special finding, then the finding was defective in matter of form. When a special finding is defective in matter of form or contents, the remedy is by a motion for a *venire de novo. Kealing* v. *Vansickle,* 74 Ind. 529; *Parker* v. *Hubble,* 75 Ind. 580; *Cottrell* v. *Nixon,* 109 Ind. 378.

No such motion was made. We therefore hold that the special finding and conclusion of law are sufficient to present the questions involved in them.

It is next contended by the appellees that the judgment in the Morgan Circuit Court is conclusive against the appellants, of all the questions sought to be litigated in this case.

Against this position appellant insists that that judgment is ineffective and not conclusive because the same had been vacated and set aside and a new trial granted to the then plaintiffs as a matter of right under the statute, and that they thereafter dismissed their suit. Appellees concede that in ordinary cases the granting of a new trial and the subsequent dismissal of the cause by

the plaintiffs effectually extinguished the judgment pre-
viously recovered in the case.  But they insist that in
actions like the present, to recover possession of, or quiet
title to, real estate where the statute confers the right on
the defeated party to demand the vacation of the judg-
ment in order that he may have one more trial regard-
less of the merits of the cause, the plaintiff, obtaining
such an order, can not proceed to use it for an entirely
different purpose by dismissing a suit the merits of which
have once on a fair trial been determined against him, and
which he fears will be determined the same way on a ·
second trial.

Under a statute very similar to ours it has been held
that such a dismissal, after the grant of a new trial as of
right, has the effect of restoring the conclusive character
of the vacated judgment, on the ground that it was only
vacated for the one purpose under the statute, and that ·
was to allow the defeated plaintiff one more trial, and
only one, if he chose to avail himself thereof; and if he
did not so choose, he must be held bound by the previous
judgment, and abide by it.    *Cunningham* v. *City of Mil-
waukee,* 13 Wis. 133; *Fraser* v. *Weller,* 6 McLean, 11.

These decisions commend themselves to our sense of
justice and right.   A contrary ruling would turn a stat-
ute intended as a shield against mistakes in the trial of
real estate cases, by permitting one new trial without
cause, into a sword of wrong and oppression, by which
a plaintiff might get any number of trials of the same
matter.   The Legislature certainly never intended any
such a thing.

But it is contended by the appellant that a contrary
rule upon this question has been established in this
State by this court in *Carmikel* v. *Cox,* 58 Ind. 133.

That case is distinguishable from the cases just cited
and from the case at bar.   In that case the defendants

were present in court, and, as this court construed the record, practically and in effect consented to the dismissal. Here the defendants were not in court when the dismissal was entered, and they could not, therefore, either object or consent to such dismissal.

Therefore the judgment against the plaintiffs in the Morgan Circuit Court was conclusive against all the parties to it, and their privies as to the question of title to the lots now in question. Ferris was a party to that suit, he then claimed a one-half interest in said lots, and he has since purchased the interest of his then coplaintiff Browning in the other half. As to that half he is a privy to the judgment as against Browning, and is bound by it the same as if he had held Browning's interest when that judgment was rendered. This result would be sufficient to justify the conclusion of law. But there is another good ground on which to rest the conclusion of law.

It is contended with great earnestness that the deed of assignment by which the Indianapolis Wagon and Agricultural Works conveyed the lots in question, with others, and their property rights, credits and effects to Eli F. Ritter, for the benefit of their creditors, was effectual to convey the title to the lots in question to him, subject to the lien of their prior judgment, and that the subsequent adjudication of bankruptcy against said Indianapolis Wagon and Agricultural Works did not avoid the previous assignment by that corporation to said Ritter for the benefit of its creditors, and though the State court ordered him to turn over all the property and assets of said insolvent corporation to its assignee in bankruptcy, which he did, as far as he could, except he made no deed or writing conveying or attempting to convey said lots to said assignee in bankruptcy, and therefore it is contended by appellant that the title to said lots remained

in Ritter, the assignee and trustee, under the State law, and that said lots never came under the jurisdiction of the bankrupt court, and that the register in bankruptcy only having attempted to convey such property to the assignee in bankruptcy as the bankrupt owned on the day of his adjudication as a bankrupt, viz., March 30, 1877, which was long after the title to the lots had been conveyed to and vested in Ritter, the assignee and trustee under the State law.

' It is therefore contended by the appellant that the attempted conveyance of said lots by the assignee in bankruptcy under the order of the bankrupt court was a mere nullity, and the title derived through the subsequent conveyances by the grantees of the assignee in bankruptcy is also ineffective and void.

And it is further contended that the proof of the judgment debt of Browning and Sloan against said wagon and agricultural works before the register in bankruptcy, the same being a corporation, did not extinguish their judgment or waive the lien thereof; and that the subsequent execution thereon and sheriff's sale and deed thereunder conveyed a good title to the lots in question, and that the appellant holds that title by virtue of the subsequent assignments and conveyances set forth in the special finding.

Conceding, without deciding, that appellant is fully justified by the law in his contention for each one of the positions thus assumed, still the appellees contend that appellant is concluded and estopped from setting up and enforcing such title by other facts found in the special finding.

Browning and Sloan were made parties defendant to English's foreclosure suit, on the alleged ground that they claimed some interest, and they answered disclaiming as to all the lots except one-half of the four now in

controversy, setting up their judgment execution, sheriff's sale and certificate, and that they had assigned one-half of the certificate to Ferris, but this assignment had not been recorded when English began his foreclosure suit. English's right to foreclose against Browning and Sloan depended entirely on the validity of the sale of the lots by the assignee in bankruptcy as against the sheriff's sale to Browning and Sloan.

If the assignee's sale was not binding on Browning and Sloan, then the court could not legally adjudge a foreclosure of English's mortgage against Browning and Sloan, because English's mortgage was made by one whose title was derived wholly through the sale of the assignee in bankruptcy. Therefore, two things must necessarily have been adjudicated and adjudged in English's foreclosure suit before the decree of foreclosure could be, as it was, entered against Browning and Sloan, viz:

1. That the sale of the lots in question by the assignee in bankruptcy as against Browning and Sloan was valid and binding.

2. That the sheriff's sale to Browning and Sloan on the execution on their judgment was invalid against Hitchcock, the purchaser at the bankrupt sale.

"Every point which * * must necessarily have been decided in order to support the judgment or decree is concluded. * * If a judgment necessarily determines a particular fact, that determination is conclusive, and requires the same fact to be determined in the same way in all subsequent actions between the same parties." 1 Freeman Judgments (4th ed.), section 257.

Generally, a judgment is conclusive only between adversary parties. 12 Am. and Eng. Encyc. of Law, 83 and 84, and authorities there cited.

Hitchcock, under whom appellees claim, was not an

adversary party to Browning and Sloan on the record in the English foreclosure suit, but he was a codefendant with them. ‘ Yet English was an adverse party to them and he necessarily had to assert and maintain the validity of the Hitchcock title derived from the bankrupt sale and the invalidity of Browning and Sloan's title, and he was in privity with Hitchcock in that contest. The Hitchcock title and the Browning and Sloan title were adverse and conflicting claims, and in that contest Hitchcock's interest was adverse to that of Browning and Sloan, though he was a codefendant with them. Besides, it is settled law in this State and in other States that a decree in a suit to foreclose a mortgage adjudicating the titles involved is conclusive upon the parties. *Bundy* v. *Cunningham,* 107 Ind. 360; *Masters* v. *Templeton,* 92 Ind. 447; 1 Freeman Judg. (4th ed.), section 303, *O'Brien* v. *Moffitt,* 133 Ind. 660 (667).

It is true the appellant Ferris was not a party to the English foreclosure suit, but he purchased one-half of the interest in the lots of Browning and Sloan since that litigation. As to that interest he is a privy with them and is equally bound with them by that decree as to that interest. When English began the suit, Ferris held an assignment of one-half of the Browning and Sloan certificate of sheriff's sale, but such assignment had not been recorded as the statute provides. R. S. 1894, section 778; R. S. 1881, section 766.

English had no notice of such assignment when he brought his foreclosure suit, though he received such notice pending that litigation.

Under such circumstances Ferris is regarded by the law as a purchaser *pendente lite* and equally bound by the decree with the parties. *Boice* v. *Michigan, etc., Life Ins. Co.,* 114 Ind. 480; *Adair* v. *Mergentheim,* 114 Ind. 303;

Wilters Mortgage Foreclosures, section 42, page 97; Bennett Lis Pendens, section 333, p. 380.

It makes no difference whether the court erred in the foreclosure decree or not.   If it did so err, the sole remedy was by appeal.   Though the decree is full of errors it is nevertheless binding and conclusive when brought collaterally in question, as it is here, so long as the court had jurisdiction of the subject and the parties and the adjudication was within the issues, all of which was the case here.   The appellant was, therefore, estopped and concluded by the decree from setting up the title he asserts.

It is contended by the appellant that the redemption from English's foreclosure sale extinguished the decree, and therefore its conclusive character was destroyed. The only effect of a sale on the judgment is to satisfy or pay the same, and the only effect of a redemption is to extinguish the sale by making the payment in money instead of the sale.

The judgment is not extinguished by a sale or satisfaction.   Its conclusiveness remains unaffected thereby; otherwise a second recovery might be had for the same cause.   The judgment, though paid, is a complete bar and conclusive of everything therein adjudicated. There was no error in the conclusion of law that appellant had no title.

The judgment is affirmed.

HACKNEY, J., took no part in this decision.

Filed Sept. 27, 1894; petition for a rehearing overruled Dec. 19, 1894.