### COMBS v. HALEY COAL CO.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3455.

1. **Life estates ⬦⬦8—Possession under dower right inures to benefit of remainderman.**

Where a son in the right of his mother went into possession of land which had been assigned to her as dower from the estate of a former husband, his occupancy inured to the benefit of the remainderman, and where continued for more than 15 years was sufficient under Carroll's Ky. St. § 2505, to cure by adverse possession, subject to the dower right, any defect in the title of the remainderman.

2. **Adverse possession ⬦⬦62(3)—Possession adverse to landlord cannot be initiated without open renunciation of his title.**

One who entered into possession of land claiming under a dower right of his mother cannot change his possession to one adverse to the title of the remainderman without open and public renunciation of that title, and recording of a deed from another to himself while so in possession is not alone sufficient.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit in equity by the Haley Coal Company against H. H. Combs and others. Decree for complainant, and defendant Combs appeals. Affirmed.

A. F. Byrd, of Lexington, Ky. (C. W. Napier, of Hazard, Ky., on the brief), for appellant.

Wm. L. Wallace, of Frankfort, Ky. (Ed. C. O'Rear and Wm. L. Wallace, both of Frankfort, Ky., and P. T. Wheeler, of Hazard, Ky., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Joab Allen, shortly after coming of age, executed a contract to convey, to the Kentucky Coal Land Company, a tract of land situated in the mountain region of Eastern Kentucky. The Haley Coal Company, as grantee of the contract vendee, filed, in the court below, a bill for specific performance, and

---

⬦⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it made additional defendants thereto H. H. Combs and his wife, alleging that they claimed some adverse interests, and asking that the plaintiff's rights be established as against them. The court below held that plaintiff's rights were superior to defendants', and granted the relief sought by the bill, which was subject to Mrs. Combs' conceded life estate.

Plaintiff's paper title is not clear. It is said to begin in a grant from the state to Stephen Napier, in 1844, but, as this grant is located by the surveyors, it covers only a portion of the land now in controversy. As located and as platted, it seems quite obvious that the description departed vitally from what Napier intended; but the present record affords no sufficient data for the correction of the error—if, indeed, it is at all capable of correction. The title is, also, as to a portion of the land, said to come through a survey by Nicholas Combs, in 1830, but its location is very uncertain. Whatever rights Nicholas Combs had came to Stephen Napier, in 1844. When Stephen Napier came to convey, in 1848, to Thomas Griggsby, he conveyed the property as described in his grant of 1844, and, also, some adjacent parcels, but did not, in terms, describe the tract he had received from Combs. It is the natural inference that he thought the Combs survey was included within his own patent. In 1854, Griggsby conveyed to Zachariah Campbell. He departed from the maze of courses and distances found in other conveyances, and described mainly by reference to water courses and ridges, in a way that is quite intelligible and that includes all the land in controversy—though we do not say that the boundaries are a "well-defined line," under the Kentucky adverse possession rule. This, however, is the end of the recorded paper title. True, the plaintiff in this case later obtained a deed from the heirs of Zachariah Campbell; but in order to overcome what otherwise might be the ripened possessory rights of Combs, plaintiff is obliged to derive its claim through long possession under Joab Allen; hence, the later deed from the Campbell heirs is not now important.

We say that the paper title stops with the deed to Campbell. There is, in the record, a title bond made by Griggsby to Owens, February 3, 1862, which probably covers, and by rather a vague description, the same land conveyed by Griggsby to Campbell in 1854, and an assignment of this bond from Owens to Campbell, October 8, 1863. There also appears thereon an assignment of "the benefit of the within two hundred acres" (the bond called for 600 acres) from Campbell to Emery Allen, dated February 11, 1862, before Campbell seemingly had any interest to assign. Nothing indicates that Griggsby had any title to convey to Owens, or that Emery Allen took anything by this assignment. However, so far as is important in this case, all parties claim under this Emery Allen. There is some rather persuasive evidence, also, of a title bond by Campbell to Allen, dated February 11, 1862, covering the entire of the same land conveyed by Griggsby to Campbell in 1854, and being, apparently, a different paper from the bond to Owens; but this evidence is not a wholly satisfactory basis

for establishing a paper title, and we do not determine its sufficiency. Emery Allen undoubtedly lived, about 1862, upon the larger description covered by the Griggsby-Campbell deed (not upon the portion now in controversy), and claiming to have a title bond from Campbell. Emery Allen died about 1862, leaving a widow, Margaret Allen, and one son, Sam Allen. Sam Allen died, about 1885, leaving a widow and one son, Joab Allen, then one year old. After the death of Emery Allen, and until about 1880, Sam and his mother lived upon parts of the larger tract and claimed ownership in the whole in the right of the Emery Allen estate. This seems to have been the neighborhood understanding, although the proof of actual possession and of the extent of the claim is somewhat vague. There is distinct evidence, however, that during this period there was some actual possession of the part now in controversy, by tenants under the Allen estate or Sam Allen, and there was no proof of any possession adverse to this claim. About 1870, the widow, Margaret Allen, married H. H. Combs, and he joined with his wife and stepson in this character of occupation and claim. About 1880, Combs and his wife moved entirely from the vicinity and lived upon other property belonging to him. Apparently, Sam Allen remained, and before and after his marriage in 1884 continued, until his death, the same character of occupation and claim to the entire Emery estate.

In 1891, Sam Allen's widow, then Mrs. Childers, and her husband and her minor son, Joab Allen, joined in a petition in equity to the Perry county circuit court, making Margaret Combs and her husband defendants. This petition alleged that Emery Allen died seized of several tracts of land, one of which seems to be the land conveyed by the Griggsby-Campbell deed. The petition further stated that this land remained the property of the estate and heirs of Emery Allen, and prayed that the dower of Margaret Allen Combs be set off and that subject thereto the dower of Mrs. Childers, as Sam Allen's widow, be set off, and that the remainder of the property be placed in the hands of a guardian to be appointed for the infant, Joab Allen. The records indicate that summons was served upon both defendants, and the judgment of the court recites that, "by agreement of the parties, it is adjudged" that the assignment of dower be made by commissioners to be appointed and that a guardian of Joab Allen take the remainder. The report of the commissioners shows that a tract which is generally identifiable as the land now in controversy was set off to Margaret Allen Combs for her dower. The description in the commissioners' report of the part so set off and called lot No. 1 is, in the main, simple and easily applied. If it were considered by itself, it is not certain that the lines would close; but the petition for assignment of dower and decree therefor and the commissioners' report constitute one record, and the tract intended to be lot 1 is easily identified all through, though with some variation in each place. Taking these together and giving reasonable interpretation to the words used, lot No. 1 is to be considered as extending from the named starting point up Lost creek, including all the

land to the top of the ridges on both sides to the field of an adjacent owner identified and described, and extending up both sides of Sixteen Mile fork, including all the land to the top of the ridges on both sides and from its mouth at Lost creek to the line of the specified owner next above on Sixteen Mile fork. This parcel, therefore, became a T, the part on Lost creek being the head and the part on Sixteen Mile fork the stem. We consider the boundaries thus established and described to be sufficiently well defined to meet the requirements of the Kentucky rule as to the constructive limits of an adverse possession. Mosley v. Kentucky Co. (C. C. A. 6) 259 Fed. 106, 112, 170 C. C. A. 174; Kentucky Co. v. Mineral Co. (C. C. A. 6) 219 Fed. 45, 133 C. C. A. 151. Further, although the commissioners' report is not shown to have been confirmed, and, if not, the proceedings were not sufficient to perfect a title, yet we think this partition record, remaining in the local courts, is sufficient to constitute, or be the equivalent of, the written instrument which will serve, under the Kentucky rule, to fix the extent of an efficient constructive possession based upon actual possession of parts thereof. See Mosley v. Kentucky Co., supra, 259 Fed. 109, 170 C. C. A. 174. The partition and assignment were matters of notoriety in the neighborhood at the time.

About 1895, Wade Combs, who was the son of Margaret Combs and her second husband, and who had been living for 15 years with his father and mother, on his father's place, was sent by them to take possession of, and occupy, in his mother's right, this lot No. 1. He established his residence there and lived there continuously until after this suit was commenced in 1913. There is nothing to indicate that, after the assignment of dower, Mrs. Combs made any claim to any interest in any of the other parts of the original estate, but she did claim, and her husband, for her, claimed, the possessory title to this portion as her dower. She at one time claimed to have completed the payments to Campbell after Emery Allen's death, which would have made her a creditor of the estate; but she seems never to have pressed this claim in any way, and it is not improbable that it was taken into account in assigning dower. Considering the acquiescence —if not the participation—of herself and her husband in the assignment of dower, the fact that she had been out of any actual possession for fifteen years, that she and her husband sent their son in from outside to occupy this lot No. 1 for her, and the absence thereafter of any claim by her to any other tract in the Emery Allen estate, we think it a proper conclusion of fact, as the district judge found, that Mrs. Combs, in 1895, entered into actual possession of parts of lot 1 and the constructive possession of all of it (except for interferences not now material), under the assignment of dower to her; that she thereby became, as to this tract, a tenant for life of the Allen estate, or, rather, of Joab Allen, the remainderman; and that Wade Combs entered and held only in his mother's right, and was therefore a subtenant under the remainderman. This conclusion is sufficient to require that the relief asked by the bill should be granted as against

Margaret Combs; indeed, she does not seem to be asserting any adverse right or claim.

[1, 2] Under statutes of limitation which bar entry upon real estate, or a suit to recover the same after a prescribed period of adverse possession, and where it appears that this adverse possession has been completed for the statutory period, it is the general rule that the one who has maintained this possession not only has a defensive right under the letter of the statute, but that this right has ripened into an affirmative title which either presupposes a grant, or, without such presumption, enables him to maintain ejectment or a bill to quiet title. Sharon v. Tucker, 144 U. S. 533, 544, 12 Sup. Ct. 720, 36 L. Ed. 532. The Kentucky statute upon the subject (section 2505, Carroll's Ky. Stat.) is of the general character of the statutes to which this rule has been applied, and fixes the period at fifteen years. Counsel upon both sides assume that this rule prevails in Kentucky, and we observe no reason why it does not. It follows that possession of lot No. 1 by Wade Combs, in his mother's right, and therefore in the underlying right of Joab Allen, for the period of 15 years ending in 1910, would fix in Joab Allen, and his grantees, a title sufficient to justify all the relief granted. It is not denied that the possession of Wade Combs during this period was sufficient in every respect, save one, to mature a title by adverse possession. It is said that in 1898 he ceased to hold under his mother and nephew, and began to hold adversely. In 1898 he and his father and mother became dissatisfied with their title. Since the cause was the making of surveys which indicated that the Napier and Nicholas Combs grants might not cover the Sixteen Mile fork property, this dissatisfaction does not indicate that they were claiming anything more than dower. Thereupon, with their consent, their son, Wade Combs, took a conveyance from one Miller, covering part of the land in dispute and said to be based upon an early Miller grant. This deed he recorded in 1904. He and his father now claim that possession thereafter was maintained under the Miller title and in hostility to the Allen title. They cannot be heard to make this claim. It is the familiar rule that a tenant may not dispute his landlord's title while he holds the possession which he received as tenant, and the Kentucky courts have repeatedly applied the corollary that in order that a tenant may initiate any possession adverse to the landlord's title, there must be an open and public renunciation of that title. Morton v. Lawson, 1 B. Mon. (Ky.) 45, 47; Farrow v. Edmundson, 4 B. Mon. (Ky.) 605; Chambers v. Pleak, 6 Dana (Ky.) 426, 428, 32 Am. Dec. 78; South's Heirs v. Marcum (Ky.) 58 S. W. 527. There was no such renunciation; on the contrary, the neighbors, many of whom were kin, testify that they never heard of any claim of title by Wade or his father, except that under the mother's dower, until about the time this suit was commenced. The recording of the deed in 1904 would be some evidence to support a claim of renouncement and public adverse holding, but it is not enough of itself to establish the necessary notoriety (Mosley v. Kentucky Co., supra, 259 Fed. at page 110, 170 C. C. A. 174), and

there is nothing else. The conveyance of the Miller title by Wade to his father, the moving onto the property by the latter, and making some measure of public claim, did not occur until 1914. It follows that what was done under the Miller title did not serve to interrupt the continuous possession being held for Joab Allen and which ripened into an unassailable title at least in 1910, and that it becomes unnecessary to consider the validity of the Miller title.

The same considerations dispose of the claims made by H. H. Combs under several patents issued to him at late dates and covering, respectively, several parcels within lot No. 1. He made no motion toward taking possession under these patents until 1914; it was then too late. It might be suggested that if these parcels were in fact vacant and had never been granted, as Combs claims, they belonged to the state, and the statute would not have run in favor of the Allen interests as against the state: but it is held in Kentucky that a grant by the state is not an assertion of the state's title, and that the statute of limitations continues to run in favor of the claiming occupant and becomes perfect against the new grantee, unless he moves before the statutory period expires. Beeler v. Coy, 9 B. Mon. (Ky.) 312, 315.

It is not easy to identify, in all respects, the property in dispute, as specifically described in the bill of complaint and in the decree, with lot No. 1 as we have interpreted its description; but the surveyors and the counsel familiar with the local topography have all assumed that substantial identity exists. No error has been assigned which would reach such a question; and it must therefore be treated as foreclosed, if it ever existed. We need not say that the fixing of the boundaries thus made by adopting plaintiff's precise description would not be effective as against an interfering claimant not a party hereto.

Upon the argument in this court, it was pointed out that, while the suit was pending in the court below, the plaintiff conveyed all its interest to another corporation in which it was merged, and therefore was not, at the time of the decree, the real party in interest. No such objection was made in the court below nor in the assignments of error or in appellant's brief, and it cannot now be considered. It seems apparent enough that the suit was in fact continued for the use and benefit of the grantee, and, if the parties desire, the court below will be at liberty to entertain a supplemental petition to put this fact upon the record and so to demonstrate that the grantee is entitled to the benefit of the decree.

The decree below is affirmed.