COAL CREEK COAL COMPANY *v*. CHICAGO, TERRE HAUTE & SOUTHEASTERN RAILWAY COMPANY, ET AL.

[No. 17,189. Filed February 21, 1944. Rehearing Denied April 14, 1944. Transfer Denied May 10, 1944.]

*Cooper, Royse, Gambill & Crawford,* all of Terre Haute, for appellant.

*Beasley, O'Brien, Lewis & Beasley,* all of Terre Haute, *Robert B. Stewart,* of Brazil, and *Bert Beasley,* of Indianapolis, for appellees.

DOWELL, J.—Appellant, in the court below filed its action to quiet title to the coal underlying the following described real estate in Vigo County, Indiana:

> The North Half of the South Half of West Fractional Section Twenty-eight (28) Township Thirteen (13) North Range Nine (9) West, lying East of the Durkee's Ferry Road.

Appellees denied the title of appellant to such coal and filed answer and cross complaint to quiet title to the following described real estate, in said county:

> The South Half of the South Half of West Fractional Section 28 Township 13 North Range 9 West, containing 67.64 acres, the North boundary line of which is described as follows: Beginning at a point 1120.3 feet South of the Northwest corner of the Southwest quarter of said Fractional Section 28 and running from thence due West to the low later line of the Wabash River.

The cause was tried to the court resulting in finding and decree for appellees as follows:

"Come now the parties by their respective attorneys, and the Court having heretofore heard the evidence and the argument of counsel, and being duly advised in the premises, now finds against the plaintiff on plaintiff's complaint herein, and finds in favor of defendants on their cross-complaint, being defendants' Second and Third Paragraphs of Answer and Cross-complaint herein, and finds that the defendants are the owners and have interest in the real estate hereinafter described as set forth in their cross-complaint; and the Court further finds that The Southern Indiana Railway Company acquired title to said real estate by deed of conveyance dated July 18, 1904, and recorded in Deed Record 112, Page 336, of the records in the Recorder's office of Vigo County, Indiana; that thereafter Chicago, Terre Haute & Southeastern Railway Company succeeded to the title and interest of The Southern Indiana Railway Company in and to said real estate by deed dated December 16, 1910, duly recorded in the Deed Records of the Recorder's office of Vigo County, Indiana; and that Chicago, Terre Haute & Southeastern Railway Company thereafter executed a lease in writing dated July 1, 1921, conveying a leasehold interest in said real estate for the term of 999 years to Chicago, Milwaukee & St. Paul Railway Company; and that thereafter such leasehold interest was conveyed to Chicago, Milwaukee, St. Paul & Pacific Railroad Company by deed dated December 31, 1927; and the Court further finds that the plaintiff claims an interest in said real estate adverse to defendants; that plaintiff's claim is without right and unfounded and that defendants are entitled to have their title quieted against the claim of plaintiff.

"IT IS, THEREFORE, CONSIDERED AND ADJUDGED by the Court that defendant, Chicago, Terre Haute & Southeastern Railway Company is the owner in fee simple of the following described real estate situate in Vigo County, Indiana, to-wit:

"A· tract of land in the Southwest quarter of Section Twenty-eight (28), Township Thirteen (13) North, Range Nine (9) West, bounded and described as follows: Beginning at a point Eleven

Hundred Twenty and Three Tenths (1120.3) feet South and Eight Hundred Sixty-nine and Six Tenths (869.6) feet East of the Northwest corner of said Southwest quarter of Section Twenty-eight (28) ; then Southeasterly by a straight line parallel to and Three Hundred Fifty (350) feet Southwesterly from the center line of The Southern Indiana Railway Company's, now Chicago, Terre Haute and Southeastern Railway . Company's e x t e n s i o n through Vigo County, as now located, Seven Hundred Seventeen and Three Tenths (717.3) feet; thence Northeasterly, at right angles, Two Hundred (200) feet, to a point One Hundred Fifty (150) feet Southwesterly from said center line; thence Southeasterly by a straight line parallel to and One Hundred Fifty (150) feet Southwesterly from said center line of said Railroad Eight Hundred Eighty-eight (888) feet to low water line in the Wabash River; thence Northeasterly with and along said low water line in the Wabash River to the intersection of said low water line with the North line of said tract; thence West to point of beginning; containing Eighteen and Seven Hundred Seventy-One Thousandths (18.771) Acres, subject to that certain lease in writing dated July 1, 1921, conveying a leasehold interest in said real estate for the term of 999 years to Chicago, Milwaukee & St. Paul Railway Company, which leasehold interest was subsequently conveyed to defendant, Chicago, Milwaukee, St. Paul & Pacific Railroad Company; and that plaintiff's claim thereto and to the coal and minerals lying in and on said real estate is without right and unfounded; and that defendants' title thereto be and the same is hereby quieted and forever set at rest against the plaintiff; it is further considered and adjudged that defendants recover of the plaintiff their costs and charges in this cause laid out and expended, taxed at _____ Dollars."

Error assigned is the overruling of the motion for new trial which challenges the sufficiency of the evidence and the legality of the decision.

Appellant asserts in its brief that the only argument is as to the boundary line between the North Half and the South Half of West Fractional Section 28. Upon this assertion, therefore, our opinion is confined to matters bearing upon that issue.

Since an adequate consideration of the problem requires its presentation in concrete form rather than by abstract terms and legal descriptions a plat of the lands in question is necessary and is presented herewith:

The land in dispute is represented by the shaded area, the appellant contending that it falls within the area embraced in the description set out in its complaint, the appellees claiming it as embraced in the description set out in their cross-complaint. Appellant's contention is predicated on the theory that the dividing line separating the quarter section into halves should be as represented by lines G to H for the reason, among others, that same will originate at a point exactly midway between points A and I, (the northwest and southwest corners, respectively of the quarter section). The acreage designated 18.771 includes the shaded area east of the diagonal boundary line.

A review of the evidence discloses that one William Harris, February 6, 1814, originally surveyed and platted certain lands bordering on the Wabash River in that area now comprising a part of Vigo County, Indiana, the said Harris, being, at the time, a deputy surveyor under the Surveyor General of the United States General Land Office and engaged generally in the surveying of public lands of the United States situate in Indiana Territory which were to be offered for sale at Vincennes, Indiana. In accordance with said Harris' plat which was returned to the General Land Office a portion of the lands so surveyed was designated West Fractional Section 28 Township 13 North of Range 9 West, same being designated as "fractional" by reason of the fact that it was of insufficient area, because of the meanderings of the Wabash River, to comprise an entire, or full, section of land. Accordingly a certain part of this fractional section was platted and designated as "the south half of the South half of West Fractional Section 28 in Township 13 North of Range 9 West containing sixty-seven acres and sixty-four hundredths of an acre," and same was purchased, on July 27, 1825, by one George W. Dewees and letters patent conveying same to him from the United States were issued on May 20, 1826. So, also, that portion, of said fractional section adjoining the above described tract on the north was platted and designated as "the north half of the South half of West Fractional Section 28 in Township 13 North of Range 9 West containing sixty-nine acres and twenty hundredths of an acre," and same was purchased, on August 5, and December 30, 1834, by Aaron and William Ballou and letters patent conveying same to them were issued on October 1, 1835. The appellees herein hold title to 18.771 acres out of the first described tract

by chain stemming from the patentee Dewees and the appellants to a portion of that tract secondly described by chain stemming from the patentees Ballou.

The various Acts of Congress governing the survey, platting and sale of these lands were derived from an Act of Congress of May 18, 1796, entitled "An Act Providing For The Sale of Lands of the United States Northwest of the River Ohio and Above The Mouth of Kentucky River," (United States Statutes at Large Vol. 1, page 464, Chap. XXIX) which was amended by the Act of May 10, 1800, (Statutes *supra* Vol. 2, page 73, Chap. LV). Among the Acts so derived was the Act of March 26, 1804, (Statutes *supra* Vol. 2, page 277, Chap. XXXV), which was entitled, "An Act Making Provision for the Disposal of the Public Lands in the Indiana Territory and for Other Purposes," and which provided for the survey and division of these lands "in the same manner and under the same regulations, and to do and perform all such other acts in relation to the said lands as is provided by law in relation to lands of the United States situate northwest of the river Ohio and above the mouth of Kentucky river." This was followed by the Act of February 11, 1805, (Statutes *supra* Vol. 2, page 313, Chap. XIV), which laid down further rules for the ascertainment of land areas. Other enactments following and pertinent to the issues here were, Act of March 3, 1805, (Statutes *supra* Vol. 2, page 343), Act of March 3, 1807, (Statutes *supra* Vol. 2, page 446), Act of April 30, 1810, (Statutes *supra* Vol. 2, page 590), Act of April 16, 1816, (Statutes *supra* Vol. 3, page 285), Act of March 18, 1818, (Statutes *supra* Vol. 3, page 409), Act of March 3, 1819, (Statutes *supra* Vol. —, page 521), Act of April 24, 1820, (Statutes *supra* Vol. 3, page 566).

The appellant contends that the division of the South Half of West Fractional Section 28 into halves (or half-quarter sections) was unauthorized by law at the time of the original survey; that the surveyor did not follow the directives of the statutes then prevailing in the matter of boundaries, division lines, etc.; that the South half of the South Half of West Fractional Section 28 contains only 67.64 acres and that the North Half contains only 69.20 acres, and that such a division of said fractional section was entirely outside the limitation of law. In passing upon this question it must be borne in mind that the first purchase of land in this fractional section, so far as the record goes, was on July 27, 1825, by George W. Dewees.

The history of Government Land Sales as revealed by the various statutes upon the subject is that such lands were in many instances divided and subdivided not once but several times in order to make land available in smaller tracts than those contemplated by the original act which provided for sales in half sections only. The legal authority for sales in half quarter section tracts was expressed in the Act of April 24, 1820, which was the last enactment on the sale of public lands prior to the purchase of the tract of land patented by the said Dewees on May 20, 1826.

It has been stated, and correctly, that statutes relating to the sale of public lands beginning with the Act of May 18, 1796, and ending, so far as regards the present case, with the Act of April 24, 1820, are *in pari materia*. See Opinions of Attorney Generals, Vol. 3, page 281 et seq., and also the case of *Gazzam* v. *Phillips et al.* (1858), 20 Howard 372, 15 L. Ed. 958, which quotes from the opinion *supra* with approval. This being true they must be treated

as together constituting one law, although they were enacted at different times. *Hyland* v. *Rochelle* (1913), 179 Ind. 671, 100 N. E. 842; *Tiger* v. *Western Investment Co.* (1911), 221 U. S. 286, 55 L. Ed. 738; *Vane* v. *Newcombe and Smith* (1889), 132 U. S. 220, 33 L. Ed. 310; *The United States* v. *Freeman* (1845), 3 Howard 556, 11 L. Ed. 724.

The first section of the latter act provided that the public lands of the United States when offered at public sale "shall be offered in half quarter sections; that when offered at private sale, they may be purchased (at the option of the purchaser) either in entire sections, half sections, quarter sections, or half quarter sections; that in every case of the division of a quarter section, the line for such division shall run north and south; and the corners and contents of half quarter sections shall be ascertained in the manner directed and prescribed in the Act of February 11, 1805; and that *fractional sections containing 160 acres or upwards shall, in like manner, as nearly as practicable, be subdivided into half quarter sections under such rules and regulations as may be prescribed by the Secretary of the Treasury; but fractional sections containing less than 160 acres shall not be divided but shall be sold entire.*" (Italics ours.)   It will be noted by reference to the aforegoing plat that West Fractional Section 28 contains more than 160 acres.   Under the latter clause of the aforegoing quotation the Secretary of the Treasury on the 10th day of June, 1820, issued instructions directing that fractional sections containing more than 160 acres should be "divided into half quarter sections by north and south or east and west lines *so as to preserve the most compact and convenient forms.*" (Our italics.)

So it becomes apparent that the Act of April 24, 1820, and the instructions issued under it did not require the

absolute platting of every quarter or half section of which the section was susceptible; but contemplated the exercise of discretion so as to prevent small and inconvenient fractions of a fractional section; and it, therefore, is likewise apparent that the deputy surveyor general in platting the subdivisions of West Fractional Section 28, here concerned, had the right to separate same into "the most compact and convenient forms," and did so. It also becomes apparent from an examination of the aforegoing plat that he divided the south half of West Fractional Section 28 into two portions of as nearly equal acreage as possible, all elements of topography considered.

The entire question presented by appellant was ably and comprehensively discussed by Attorney General B. F. Butler in his opinion on the case of Etheridge delivered August 2, 1837, cited *supra*. The conclusions reached therein were confirmed by the Commissioner of the Land Office, by the Secretary of the Treasury, and by the Supreme Court of the United States as will be seen from an examination of the case of *Gazzam* v. *Phillips* et al., cited *supra*.

With this problem so resolved there remains the question of determining from the evidence whether the line dividing the south half of Fractional Section 28 (line C to D in the aforegoing plat) is the true boundary established by the deputy surveyor general. On this point evidence most favorable to the appellee discloses that at the point designated C in the plat there is discovered a hard, round stone of the type commonly known as "niggerhead" on the surface of which appear, carved in letters about one-half inch wide and one-eighth inch deep, the initials W. H.; that the deputy surveyor general in charge of the government survey was named William Harris; that said stone probably

was placed in its location over one hundred years ago; that the southwest corner of property owned by Frank Leek in the North half of said South Half of Fractional Section 28 and west of the Durkee's Ferry Road coincides with the location of said stone; that from this point and extending due east to the Durkee's Ferry Road there is a row or line of trees of great age; that this line marks the South boundary of said Leek's land and has never been in dispute; that this line extended due east to the Wabash River will coincide with the line $E$ to $D$ in the aforegoing plat; that the plat of Township 13 North of Range 9 West in the archives of the office of the Auditor of State of Indiana which is a true copy of the original made by the deputy surveyor general shows the boundary line between the Dewees and Ballou patents and that said boundary line was not intended to originate at the point as contended by appellants; that a re-survey of the south half of the South Half of Fractional Section 28, using as the north boundary thereof the line designated $C$ to $D$ in the aforegoing plat results in a confirmation of the acreage as shown in the Dewees patent with an error of only sixty-four hundredths of an acre plus; that a resurvey of same using as the north boundary thereof the line contended for by appellants results in an error of nine and fifty-four hundredths acres less than the acreage shown in said patent.

In the light of such evidence it is difficult, if not impossible, to escape the conclusion that the line designated $C$ to $D$ is the true boundary line established by the deputy surveyor general.

It is asserted by both appellant and appellees that the point represented as $A$ in the aforegoing plat is not disputed, this point marking the northwest corner of the South Half of Fractional Section 28.

The appellees claim title by virtue of warranty deed dated July 18, 1904, executed and delivered by the heirs of one Thomas Beauchamp to the Southern Indiana Railway Company in which the land thereby conveyed is described as: "Beginning at a point 1120.3 feet. south and 869.6 feet east of the northwest corner of said southwest quarter of Section 28 . . . ." This description is somewhat misleading in that it refers to the South Half of West Fractional Section 28 as the "south west quarter of Section 28," the scrivener evidently having considered the West and the East Fractional Sections 28 as one section whereas the public lands laws contemplated that each was to be regarded as a separate and distinct tract of land. This departure, however, is of little moment in deciding the issues presented by the instant case.

It will be noted that the point of beginning named in the description aforegoing falls upon the line established by the deputy surveyor general, as hereinbefore determined, at a point 869.6 feet east of the stone bearing the initials W. H.

From the date of the Beauchamp deed, so far as the record title is concerned, the chain which terminates with the title of appellees, is complete and unbroken, nor does appellant in any wise challenge, except as herein stated, the chain of title at any point from the original patent by Dewees.

Appellant claims title by virtue of deed dated November 23, 1905, from George W. Leek and Mattie J. Leek in which the coal conveyed is described as that underlying "The North Half ($\frac{1}{2}$) of the South Half ($\frac{1}{2}$) of West Fractional Section Twenty-eight (28) Township Thirteen (13) North of Range Nine (9) West lying East of the Durkee's Ferry Road."

We conclude, therefore, that the trial court did not

err in holding that the legal record title to the land described in its decree is vested in appellee Chicago, Terre Haute & Southeastern Railway Company.

Appellant does, however, assert title in itself by virtue of adverse possession. Here again, as in the matter of boundaries, the evidence is somewhat conflicting and we have not the right to weigh it to determine where the preponderance lies. The land involved in this controversy is rough and broken bottom land subject to overflow of the Wabash River. It formed a portion of farm lands at various periods of its history but was never enclosed. While there is some evidence tending to show that appellant's predecessors in title farmed portions of it other evidence shows that appellees' predecessors did likewise. It was, for all practical purposes, valueless as productive farm land and, as such, was worth, at its highest valuation, no more than $30 per acre. The burden of overcoming the presumptions which exist in favor of the holder of the legal record title rests upon the one claiming title by adverse possession and the proof must be strict, clear, positive and unequivocal. Appellant's proof lacks that degree of certainty required by the rule. *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 129 N. E. 19, 129 N. E. 706.

Appellant's contention that appellees had no right to file a cross-complaint or counterclaim to land other than that included in appellant's complaint is not subject to our consideration since the question is raised here for the first time and was never presented in proper form to the court below.

For the same reason we cannot review questions presented here for the first time assailing certain alleged

imperfections and omissions in the finding and decree. The finding was against the appellant, plaintiff below, on its complaint. The decree was for appellees. The propositions presented by appellant should have been tested first by proper pleadings in the court below. *Peoples Savings, etc.* v. *Spears et al.* (1888), 115 Ind. 297, 17 N. E. 570; *Koons* v. *Burkhart* (1918), 68 Ind. App. 30, 119 N. E. 820.

We perceive no error.

Affirmed.

NOTE.—Reported in 53 N. E. (2d) 179.