SHEETS ET AL. *v.* STIEFEL ET AL.

[No. 17,592. Filed October 10, 1947.]

586

*Wood & Wood,* of Angola, for appellants.

*Mountz & Mountz,* of Garrett, for appellees.

CRUMPACKER, P. J.—This controversy concerns the ownership of a strip of unplatted land in the city of Angola, Indiana. The land involved is located on the south side of Stoker Street approximately 100 feet west of North Wayne Street and has a 23½ foot frontage and a depth of 66 feet. Both the appellants and the appellees claim to own this property and in the court below both sought to quiet title thereto as against the claims of the other. The case was tried to the Steuben Circuit Court without the intervention of a jury. The court found the facts specially and stated the following conclusions of law thereon: (1) That the law is with the defendants (the appellees); (2) that the defendants' title to the land in controversy should be quieted against the plaintiffs (appellants); and (3) that the defendants are entitled to recover costs. Judgment went accordingly and in this appeal the appellants make the following contentions as grounds for reversal: (1) The conclusions of law stated by the court are not warranted by its special finding of facts and therefore errone-

ous; and (2) the facts as found specially compel the statement of conclusions of law favorable to the appellants.

The appellees' cross-complaint, upon which they recovered the affirmative judgment here questioned, is in two paragraphs. The first is in the usual short form and merely alleges ownership and possession of the land in dispute and asserts that the appellants claim an interest therein adverse to their title, which claim is without right and unfounded. The second alleges ownership by adverse possession and unlawful claims by the appellants which cloud their title. Under the allegations of the first paragraph of the cross-complaint the appellees had the burden of proving the ownership of some interest in the land which was superior to the claims of the appellants and which entitled them to possession. Under the second paragraph of said cross-complaint the appellees had the burden of proving that they and their grantors had been in actual visible, notorious and exclusive possession, under claim of ownership, and hostile to the owner of the record title and to the world at large and which possession was continuous for the full period prescribed by the statute, *Philbin* v. *Carr* (1921), 75 Ind. App. 560, 582, 129 N. E. 19, 129 N. E. 706, and also the payment of all taxes and special assessments legally levied against the property involved during such period. § 3-1314, Burns' 1946 Replacement.

If the court failed to find any fact which it was essential for the appellees to prove in order to make a case under either paragraph of said cross-complaint its conclusions of law, as above set out, are erroneous. It has been held, where special findings are silent as to an essential fact, this court "may give heed to a fact *appearing in the evidence*

*which does not admit of dispute* in order to uphold the judgment." *Marion Trust Co.* v. *Bennett* (1907), 169 Ind. 346, 82 N. E. 782; *American Income Ins. Co.* v. *Kindlesparker* (1936), 102 Ind. App. 445, 200 N. E. 432. The transcript in this case, however, does not contain the evidence and therefore nothing can be added to the special findings by presumption, inference or intendment. *State ex rel.* v. *Meiser, Trustee* (1929), 201 Ind. 337, 168 N. E. 185; *Home Equipment Company Inc.* v. *Gorham* (1941), 218 Ind. 454, 33 N. E. (2d) 99; *McClellan* v. *Tobin* (1942), 219 Ind. 563, 39 N. E. (2d) 772.

With these principles in mind we have examined the special, finding of facts with care and only in findings Nos. 10 and 11 are there any facts found which in any way indicate that the appellees have any interest of any kind whatsoever in the land in controversy. In finding No. 11 the court finds that a tract of land "132 feet east and west and 66 feet north and south lying immediately west of the west boundary line of North Wayne Street in the city of Angola, Indiana, and lying immediately south of the south line of Stoker Street of said city" is shown by the plat book in the Auditor's office of Steuben County to be assessed to the appellees and that "no taxes have been paid on said real estate or any part thereof since 1902 except as paid by the defendants (appellees) therein and their grantors." The land involved is included in the above description but it seems to us that this finding is the mere recital of primary or evidentiary facts. The same may be said of finding No. 10 wherein the court finds that the appellees removed all fences and fence posts from a line established by a statutory survey as separating the land claimed by the appellants and that of one Newell.

These facts being primary and at best merely evidentiary must be disregarded unless they compel the conclusion that the appellees own the land in controversy. We do not think such conclusion must necessarily follow. It is common knowledge that occasionally land is assessed to the wrong person on the public records. Changes in ownership are not always promptly made on collateral records and a plat book indicating ownership in the appellees is far from conclusive. That portion of the finding in reference to the payment of taxes is negative in nature and is a far cry from a finding that the appellees and their grantors paid all the taxes and special assessments legally charged to the real estate in question as required by § 3-1314, Burns' 1946 Replacement in adverse possession suits. See also *Cooper* v. *Tarpley* (1942), 112 Ind. App. 1, 41 N. E. (2d) 640.

Except as above indicated the findings are silent as to how, from whom, when or in what manner the appellees acquired any interest in or right to the disputed land. It is suggested by the appellees that finding No. 11 overcomes these defects and establishes title in them by adverse possession and that that finding alone is sufficient to sustain the court's conclusions of law. Assuming for the sake of discussion that finding No. 11 establishes title by adverse possession in one Heman G. Newell yet nowhere is it found that the appellees ever succeeded to the rights of Newell and as far as the findings disclose he is still possessed of such title.

It is our opinion that the conclusions of law on the facts found are erroneous and that the judgment so far as it establishes title in the appellees must be reversed.

This brings us to a discussion of the appellants' con-

tention that the special finding of facts compel conclusions of law favorable to them.

If the appellants recover it must be on the strength of their own title and not upon the weakness of the title in the appellees. This principle of law has been stated and re-stated so many times by our courts that it has become axiomatic in Indiana. The appellants concede this but they say that the court found that they were the owners of the record title and in physical possession of the land when this suit was started; that the court failed to find facts essential to the appellees' claim and therefore their present action against the appellees cannot be defeated by the possibility of a superior claim of title by adverse possession in Heman G. Newell, who is not a party hereto. This contention has merit if it correctly construes the actual purport of the special findings. 44 Am. Jur., Quieting Title, § 50.

As was stated in *Philbin* v. *Carr, supra,* "the subject of real estate titles is regarded as of sufficient public importance to justify state regulation." In so doing the legislature enacted § 56-103, Burns' 1933, which provides: "Conveyances of land or of any interest therein, shall be by deed in writing subcribed, sealed and duly acknowledged by the grantor or by his attorneys, except bona fide leases for a term not exceeding three years." Titles created in the manner of our statutes are commonly called record or legal titles, as distinguished from equitable titles, and it has always been the policy of the law to protect them. The record title is the highest evidence of ownership and is not easily defeated.

The question immediately arises—does the special finding of facts in the present case show record title to

the disputed real estate in the appellants? The court found that on the 10th day of April, 1902, one Andrew Craig and Mary J. Craig, husband and wife, were the owners, as tenants by entireties, of certain real estate in Steuben County which the finding specifically described by metes and bounds and which includes the strip of land here involved. On said day the Craigs carved out a plot of land in the northeast corner of their holdings above mentioned and conveyed the same to Heman G. Newell. The plot so conveyed did not include the land in dispute but immediately adjoins it on the east. On March 25, 1908, the Craigs again carved out a plot of land in the northeast portion of their said holdings and conveyed the same to one Ella F. McGrew. Like the Newell deed this conveyance did not include the land in controversy but immediately adjoins it on the south. There is a finding to the effect that when Newell went into possession of the land conveyed to him he also possessed himself of the strip of land in dispute, which lies immediately west of his lot, and remained in adverse possession thereof for more than 20 years. But Newell is not a party to this suit and no one is seeking to quiet title as against him. As heretofore stated no privity is found between Newell and the appellees so whatever his rights may be they do not militate against the rights of the appellants to quiet their title against the appellees.

On September 16, 1926, Ina L. Emerson and Fred Emerson, her husband, and Onna Craig, unmarried, conveyed all the land remaining in the acreage originally belonging to Andrew and Mary Craig, except that conveyed to Newell and McGrew, to Harmon Sheets and Elsie Sheets who in turn, on November 22, 1934, conveyed the same to the appellants. The land in dispute is included in both of these convey-

ances. There is no finding as to how, when or through whom the Emersons and Onna Craig got title and there is no finding that they ever owned the land described in their deed to the appellants' immediate grantors. Had the special findings not found title in Andrew .and Mary Craig or had they found a divesting of such title and the eventual vesting thereof in the appellants, we would say that the deed of November 22, 1934, vested the record title in the appellants. An analysis of the special findings however shows ownership of the disputed land still in Andrew and Mary Craig and that the Emersons and Onna Craig had nothing to convey. This being true the deed upon which the appellants rely as creating record title in them can be considered as doing nothing more than giving them color of title. § 3-1504, Burns' 1946 Replacement. Such title however is sufficient as against the appellees if the findings show actual occupancy of any part of the land the deed purports to convey, as where color of title exists actual possession of a part only is regarded in law as possession of the whole. *Philbin* v. *Carr, supra.*

The findings are silent as to the ultimate fact of occupancy or possession by the appellants but we are asked to infer this fact from finding No. 10 wherein the court finds that the appellees, sometime prior to the commencement of this action, removed a certain fence separating the land in controversy from that deeded to Newell in 1902, and will, unless enjoined, continue to remove any fences the appellants might erect thereon. The fencing in of any land by one who claims to own it is a possessory act but the findings do not determine, with any degree of certainty, who erected the fence here involved or whether it was erected before or after the appellants acquired color of title.

It is our opinion that the special finding of facts does not justify and will not support conclusions of law favorable to the appellants. It is apparent that ██ to affirm the judgment against the appellants on their complaint and to order conclusions of law unfavorable to the appellees on their cross-complaint with judgment accordingly, would leave this controversy wholly unsettled. The ends of justice and public policy demand that it be put to an end. The judgment in its entirety is therefore reversed with instructions to the Steuben Circuit Court to order a new trial of all issues involved. *Schofield* v. *Green* (1944), 115 Ind. App. 160, 56 N. E. (2d) 506; *Murdock* v. *Cox* (1889), 118 Ind. 266, 20 N. E. 786.

NOTE.—Reported in 74 N. E. (2d) 921.