MILHON *v.* BROWN.

[No. 18,837. Filed July 9, 1957. Rehearing denied October 11, 1957.]

*Clinton H. Givan,* of Indianapolis, and *Charles H. Foley,* of Martinsville, for appellant.

*Gilbert W. Butler,* of Martinsville, for appellee.

COOPER, P. J.—This is an appeal by the appellant from the judgment in a cause wherein the appellee filed a complaint in three paragraphs.

The appellant filed a motion for a separate trial on the third paragraph of complaint, which motion was sustained by the trial court.

The first paragraph of the appellee's complaint was to quiet title to the following-described real estate in Morgan County, Indiana:

"All of the Northwest quarter of Section 10, and all the South half of Section 3, Township 12 North, Range 1 East, which lies East of White River, except 20 acres off the East side of the East fraction of said Northwest quarter of Section 10, bounded on the North by White River and on the South by Martinsville and Mooresville State Road."

Second paragraph of appellee's complaint was in ejectment and trespass. The appellant answered by general denials to each rhetorical paragraph of the complaint, except as to rhetorical paragraph two of first paragraph of complaint, wherein the appellant asserted that he was the owner in fee simple of the land in Section 3 as herein set out:

"Part of the West half of Section 3, Township 12 North, Range 1 East, described as follows: Beginning at a stone marking the center of Section 3; thence following the center of a County road, North 1.00 chain; thence North 36 degrees West 1.30 chains; thence West 17.60 chains; thence North 33 degrees West 0.63 chains to the center of the Pennsylvania Railroad; thence following the center of said Railroad South 60 degrees 30 minutes West to the West line of Section 3; thence South following said West line of Section 3, to the Southwest corner of Section 3; thence East following the South line of Section 3, to the South half mile corner of Section 3, thence North to the place of beginning, containing 145 acres, more or less,"

and that his title is superior to the claim or title of the plaintiff.

Thus, under the issues, only the title to the lands lying in Section 3 is in controversy.

The causes, among others, for which the new trial was asked, were that the verdict was not sustained by sufficient evidence and was contrary to law.

The evidence in the record shows that at the beginning of the trial there was a certain stipulation made by the parties concerning various conveyances made to 98.76 acres of land in Morgan County, the same being described in the stipulation as, all the northwest quarter east of White River, excepting twenty acres off of the East side of the East fraction of the Northwest Quarter bounded on the North by White River and on the South by the Martinsville and Mooresville road. There is no direct reference in the stipulation as to any land in either Section 10 or Section 3 as alleged in the appellee's complaint. There were no exhibits or deeds put in evidence as to her title thereto. The stipulation reveals that the first time the appellee held title to the real estate hereinabove described in the stipulation was on November 29, 1946, when Giles M. Dickson and Elizabeth M. Dickson, husband and wife, conveyed to her the real estate described in the stipulation, and, thereafter, on February 21, 1947, the appellee reconveyed to the said Giles M. Dickson and Elizabeth M. Dickson, husband and wife, the same real estate, and thereafter, after the death of Giles M. Dickson on February 8, 1949, his widow conveyed to Myra Craddick, Trustee to reconvey the same real estate to Elizabeth M. Dickson and Mary Catherine Brown, jointly, with full and complete right of survivorship, and that said deed was recorded on February 11, 1949, in the office of the Recorder of Morgan County.

The record shows that appellee, on direct examination, in testifying as to the physical boundaries of the farm, said that she understood the accepted boundaries on the north was the river.

On cross-examination, however, the appellee testified that she first became interested in the land in controversy in 1948; that she was claiming ownership in the acreage described in the deed.

That the appellee was not claiming any land in Section 3 is shown by the following pertinent questions propounded to the appellee and her response thereto:

"Q. Do you have any knowledge at all as to the section lines located on that land, as to where they are?

"A. All I have to go by is the deed.

"Q. Well, your deed does not call for any land in Section 3?

"A. No, sir, it does not.

"Q. So, if you went by the deed you would not be claiming any land in Section 3?

"A. No.

"Q. You are claiming by the deed?

"A. I am not claiming any land in Section 3.

"Q. You are not claiming any land in Section 3?

"A. No, sir.

"Q. Do you claim any land in Section 4?

"A. No, sir.

"Q. Do you claim any land in Section 8?

"A. No, sir.

"Q. All you are claiming is in Section 10?

"A. That is right."

There was no evidence from any of appellee's witnesses or from any other witness from which it could be found or reasonably inferred she owned or claimed any interest in any real estate in Section 3. In fact her own evidence heretofore set out indicates she claimed no such interest.

Thus, it is apparent that appellee has failed to sustain the burden of proof that she is the owner of the record title to any land whatsoever in Section 3, as averred in paragraphs Nos. 1 and 2 of her complaint.

In an action to quiet title to real estate the plaintiff must prevail on the strength of his own title and the failure of the defendant to establish title to the involved real estate, as is the situation in this case, furnishes no ground for recovery by the plaintiff. *Hughes* v. *Cook* (1955), 126 Ind. App. 103, 130 N. E. 2d 330, 333; *L. & G. Realty & Const. Co.* v. *City of Indianapolis* (1957), 127 Ind. App. 315, 139 N. E. 2d 580. For additional authorities, see West Ind. Digest, Vol. 23, page 380.

As we have stated, the appellee, upon the record before us, failed to establish a record title to any lands in Section 3 as averred and described in paragraphs Nos. 1 and 2 of her complaint; and there is no evidence whatsoever that any part of the 98.76 acres referred to in the stipulation is in said Section 3, as averred in paragraphs Nos. 1 and 2 of her complaint. It would appear, then, that appellee must rely upon the adverse possession of the land described in Section 3 as establishing title thereto in her. We, therefore, look for evidence to sustain the essential elements requisite to raise in her a title by adverse possession. Such elements are now well known and require no citation of authority in defining them.

We shortly state the possession of a claimant of adverse title must be continuous for at least the statutory period of limitation, and must be actual, visible, notorious, exclusive under claim of ownership, and hostile to the owner and to the world at large, excepting the government. The claimant of such title always asserts the same in derogation of the right of the real owner. *Marengo Cave Co.* v. *Ross* (1937), 212 Ind. 624, 630, 10 N. E. 2d 917; *Philbin* v. *Carr* (1920), 75 Ind. App. 560, 129 N. E. 19.

Here, the appellee admits in his brief that the appellant claims legal title to said land in said Section 3

by virtue of a deed from Indiana University. In the absence of any evidence establishing legal title elsewhere, it must be assumed that the appellee claims in derogation of the apparent right of the appellant to the land under his said deed. Under our law, record title is the highest evidence of ownership and is not easily defeated. *Norling* v. *Bailey* (1951), 121 Ind. App. 457, 459, 98 N. E. 2d 513; *Sheets* v. *Stiefel* (1947), 117 Ind. App. 584, 74 N. E. 2d 921. Now, as we have already mentioned, the appellee must prevail, not upon any weakness in the appellant's title, but upon the strength of her own. The fact relied upon by the appellee as constituting the adverse possession by her must be sufficient to raise title in her and must be strictly proved. Also, she assumes the burden of so doing. *Norling* v. *Bailey, supra; Coal Cr. Coal Co.* v. *Ch., T. H. & E. Ry. Co.* (1944), 114 Ind. App. 627, 53 N. E. 2d 179; *Philbin* v. *Carr, supra; Sheets* v. *Stiefel, supra.*

We have searched in vain for evidence which tends fairly to prove the essential elements aforesaid which are imperative to the appellee's claim of title. Such title cannot be established by inference or implication. There must be competent and substantial evidence to support the title asserted. See cases hereinabove cited.

The record discloses no such evidence of adverse possession by the appellee, sufficient to warrant the lower court in decreeing title in the appellee; therefore, there is a lack of evidence to sustain the verdict of the jury, and it is contrary to law.

The judgment is reversed, with instructions to the Morgan Circuit Court to sustain appellant's motion for a new trial.

Bowen, J., and Pfaff, J., not participating.

## On Petition For Rehearing

COOPER, P. J.—Appellee's petition for rehearing urges that our opinion contravenes the ruling of the Supreme Court of Indiana in the following cases: *Pittsburgh, etc. R. Co.* v. *Stickley* (1900), 155 Ind. 312, 58 N. E. 192; *Rosenmeier* v. *Mahrenholz* (1913), 179 Ind. 467, 101 N. E. 721, and *Echterling* v. *Kalvaitis* (1955), 235 Ind. 141, 126 N. E. 2d 573.

The cases cited by the appellee do not aid her under the evidence in the case at bar nor does this court's opinion contravene the rulings of the Supreme Court in said cases.

In the case of *Pittsburgh, etc. R. Co.* v. *Stickley, supra,* the evidence shows that a fence had been built or located at a place the parties thought the true line to be; that a house had been built upon the land and other improvements made. Twenty-five years later it was discovered that the fence was not on the true line, the old fence was torn down and a new fence was erected on the true line. In that case the evidence disclosed actual possession, improvements to the land and also all the elements of adverse possession. The pertinent part of the Supreme Court's ruling under such evidence was, "The possession for twenty-five years was continuous, open, peaceable, and under a claim, established by evidence, that the old fence was the true boundary, a claim that appellant acquiesced in until it was too late to object."

In the Rosenmeier case, *supra,* the evidence disclosed that one Meinert and Opperman, landowners, located a line boundary and upon that line a fence was built and maintained for forty years and for that period of time it was recognized as the true line by the parties. Under those circumstances, the Supreme Court stated, "It has been decided many times in this State that the location of a division boundary fence, *acquiesced in and*

*acted upon,* and the premises improved and used up to the line by each owner for twenty years becomes the true line." (Our emphasis.)

The Echterling case, *supra,* is another line-fence case in which the Supreme Court stated, "Substantial evidence shows that the appellees and their predecessors in title had continuous, open, and notorious, adverse possession of land up to an established boundary-line fence for a period of twenty years, which conferred fee-simple title to the strip in question by operation of law, and the original title of the appellants was thereby extinguished."

The legal principles enunciated by our Supreme Court in the cases referred to are sound and of long standing. But, they are without aid to the appellee in this case as not applicable to the facts and circumstances established by the evidence in the record before us.

Petition for rehearing overruled.

Bowen, J., and Pfaff, J., not participating.

NOTE.—Reported in 143 N. E. 2d 573.
Rehearing denied, 145 N. E. 2d 307.