WILLIAM PIEL AND DONALD PIEL *v*. NETTIE DeWITT ET AL.

[No. 2-1274A303.  Filed July 21, 1976.]

*Joe Heaton,* of Tipton, for appellants.

*Daniel J. Harrigan, Bayliff Harrigan Cord & Maugans,* of Kokomo, *Wilson Wheatley,* of Tipton, for appellees.

## CASE SUMMARY

BUCHANAN, P.J.—Defendants-appellants William Piel and Donald Piel appeal from a trial court judgment declaring the plaintiffs-appellees DeWitt, Niemann, et al. owners of a one-half undivided interest in eighty acres of real estate and from the trial court's order in partition for the sale of this real estate, asserting that (1) defendants-appellants (Piel) hold title to the entire eighty acres by adverse possession, (2) the action of plaintiffs-appellees (DeWitt, Niemann, et al.) is barred by laches and the statute of limitations governing partition actions, and (3) the trial court abused its discretion in refusing to grant defendants-appellants leave to amend their answer pursuant to Ind. Rules of Procedure, Trial Rule 15.

We affirm.

## FACTS

The essential facts have been stipulated or are undisputed:

In 1931, Charles Niemann died the owner of eighty acres of real estate located in Tipton County, Indiana. He devised a life estate on the land to his second wife, Clara, and the remainder interest in fee simple to their son, Carl Niemann. The decedent was also survived by two children from his first marriage, Nettie DeWitt and Henry C. Niemann.

In 1945, Carl Niemann, a minor, died intestate survived only by his mother, Clara Niemann, his half-sister, Nettie DeWitt, and his half-brother, Henry C. Niemann, as his sole

heirs at law. Early in 1946, Clara requested an administrator be appointed for her deceased son's estate. In her petition for appointment, Clara listed herself, Nettie DeWitt, and Henry C. Niemann as the only known heirs of the decedent. In accordance with the laws of intestate succession in effect at that time, title to an undivided one-half of the eighty acre tract then vested in Clara and an undivided one-fourth each passed to Nettie and Henry subject to Clara's life estate.[1]

---

1. In the alternative, Piels have argued Clara Niemann was the sole heir of her son Carl Niemann. Carl neither married nor left lineal descendants. Under the pre-probate Code law of 1945, Burns 6-2303; 1 R.S. 1852, ch. 27, § 3, p. 248, now repealed, stated:

Parents, brothers and sisters—If any intestate shall die without lawful issue or their descendants alive, one-half of the estate shall go to the father and mother of such intestate, as joint-tenants, or, if either be dead, to the survivor, and the other half to the brothers and sisters and to the descendants of such as are dead, as tenants-in-common.

Since Carl's father died prior to 1945, one-half of the parental share descended to the survivor, Clara Niemann.

See: *Truelove* v. *Truelove* (1909), 172 Ind. 441,
        86 N.E. 1018, 88 N.E. 516.

The use of the phrase "brothers and sisters" in Burns 6-2303 included brothers and sisters of the half blood such as Henry C. Niemann and Nettie DeWitt.

See: *Anderson* v. *Bell* (1894), 140 Ind. 375,
        39 N.E. 735.

Burns 6-2306; 1 R.S. 1852, ch. 27, § 6, p. 248, in effect in 1945 but now repealed, unequivocally stated kindred of the half-blood shall inherit equally with those of the whole blood unless the estate shall have come to the intestate decedent by way of gift, devise or descent from an ancestor; and then only those who are of the same blood of such ancestor shall inherit. The ancestor here is Charles Niemann who was the father of Carl Niemann, Henry C. Niemann, and Nettie DeWitt. Therefore Henry and Nettie were of the same blood as the ancestor and were eligible to inherit through Burns 6-2303.

See: *Robertson* v. *Burrell* (1872), 40 Ind. 328.

The probate court came to the same conclusion in 1947 when it approved the administrator's final report granting Clara one-half, Nettie one-fourth, and Henry one-fourth of Carl's estate. For the first time in their reply brief, Piels attempt to collaterally attack the determination of heirship made prior to the settlement of Carl's estate. The time to dispute the final settlement of Carl's estate has long since past, and Claimants' arguments will not be considered here.

See: IC 1971, 29-1-6-7 (Burns Code Ed.)
        *Manor* v. *Manor* (1944), 222 Ind. 374,
        53 N.E.2d 343;

See also: *Flick* v. *Simpson* (1970), 145 Ind. App. 698.
        255 N.E.2d 118;
        *Saloom* v. *Holder* (1974), Ind. App.,
        307 N.E.2d 890.

Clara was in possession of the entire eighty acre tract from the death of her husband Charles in 1931 until 1962.

At that time, 1962, Clara executed a warranty deed to her brother, William Piel, in which she purported to convey ownership to the entire eighty acres in exchange for "one dollar and other valuable consideration." Along with the deed, Clara recorded an "affidavit of transfer" which stated she was the sole heir of her deceased son Carl and owner in fee of the entire eighty acre tract. William Piel took possession of the land immediately after the conveyance to him in 1962 and remained a tax paying occupant thereafter.

There was no evidence presented indicating that the plaintiffs-appellees claiming an undivided one-half interest as remaindermen had actual notice of Clara's conveyance to her brother Piel.

In 1966, Henry C. Niemann died testate leaving his one-fourth remainder interest in equal shares to his wife Elizabeth C. Niemann, and to their two sons George C. Niemann and Paul Edward Niemann.

The life tenant, Clara Niemann, died January 20, 1973.

On February 23, 1973, Nettie DeWitt and the three heirs of Henry C. Niemann, along with their spouses, joined as plaintiffs in a complaint against the Piels for partition praying that they be adjudged fee simple owners of one-half the real estate.

After stipulating the relevant facts and agreeing upon the admissibility of certain documentary exhibits, the parties submitted the cause to the trial court, which then entered judgment on May 16, 1974 finding William Piel to be owner in fee simple of an undivided one-half interest in the real estate; plaintiff Nettie DeWitt was adjudged as owner of a one-fourth interest, and the three devisees of Henry Niemann were each declared owners of a one-twelfth interest.

For ease of reference defendants-appellants William Piel and Donald Piel will be referred to as the Claimant, (no in-

terest is claimed by Donald) ; plaintiff-appellee Nettie DeWitt, daughter of decedent Charles Niemann by his first wife, and Elizabeth Niemann, George C. Niemann, and Paul Edward Niemann, as heirs of Henry Niemann (deceased son of Charles Niemann), and their respective spouses will be collectively referred to as the Remaindermen; Clara Niemann will sometimes be referred to as the Life Tenant.

## ISSUES

Two issues are presented for disposition :[2]

ISSUE I: Did the Claimant (Piel) gain title to the entire eighty acres by adverse possession?

ISSUE II: Was the suit for partition filed by the Remaindermen in February of 1973 barred by laches and the statute of limitations governing partition actions?

As to ISSUE ONE, the Claimant maintains the statute of limitations began to run against the Remaindermen (and their predecessors in title) in 1962 when the Life Tenant (Clara) conveyed the land to him; the recording of her deed, accompanied by her affidavit asserting sole ownership, put them on notice that his possession of the premises was adverse to their interests. Thus the Remaindermen failed to bring suit within the ten year limitation period (IC 1971, 34-1-2-2 (Burns Code Ed.)) and title vested in the Claimant by adverse possession.

The Remaindermens' reply is that the statute of limitations does not begin to run against a vested remainderman until the intervening life estate terminates. Absent actual notice, the life tenant cannot possess the land adverse to the remainderman. The Remaindermen lacked actual notice of the Life Tenant's 1962 conveyance and therefore were not bound to assert their claim until her death in 1973, which they did approximately thirty days after she died.

2. In view of our decision as to Issues One and Two we need not reach Claimant's alleged error in the trial court's refusal to allow him to amend his answer to plead the statute of limitations and adverse possession.

As to ISSUE TWO, the Claimant (Piel) argues a right to partition accrued in the Remaindermens' favor in 1945 when Carl Niemann died, as a suit commenced eighteen years later is barred by both the statute of limitations and the doctrine of laches.

The Remaindermen deny they had a possessory right in 1945 and were justified in awaiting the termination of Clara's life estate before commencing this action, and therefore have diligently asserted their known rights.

## DECISION

ISSUE ONE:

CONCLUSION:

It is our opinion the Claimant did not acquire title to the real estate, or any part of it, by adverse possession because the statute of limitations had not expired at the time the Remaindermen commenced this action.

The Claimant's dilemma is that when his sister Clara conveyed the real estate to him in 1962 she only owned an undivided one-half interest and was a life tenant as to the other one-half, title to which had already vested in the Remaindermen subject to her life estate.[3] Unless he, the Claimant, can demonstrate that he has acquired title to the entire tract— and not just her life estate and her undivided one-half interest —by adverse possession for the ten year statutory period, (IC 1971, 34-1-2-2 (Burns Code Ed.))[4] the trial court's judgment

---

3. IC 1971, 32-1-2-36 (Burns Code Ed.) provides:
*Conveyance of greater estate by tenant for life.*—A conveyance made by a tenant for life or years, purporting to grant or convey a greater estate than he possessed, or could lawfully convey, shall not work a forfeiture of his estate, but shall pass to the grantee or alienee all the estate which the tenant could lawfully convey.

4. IC 1971, 34-1-2-2 (Burns Code Ed.) in relevant part states:
The following actions shall be commenced within the periods herein prescribed after the cause of action has accrued, and not afterwards.
... Sixth. Upon contracts in writing other than those for the payment of money within twenty [20] years: Provided, however, That upon all morgages other than mortgages defined and enumerated by

must be affirmed. If the Remaindermen were given sufficient notice of his adverse possession prior to the death of the Life Tenant (Clara) in 1973, then the Claimant could have acquired title by adverse possession pursuant to IC 1971, 34-1-2-2. Unfortunately, the Claimant cannot successfully carry this burden.

To acquire title by adverse possession, the Claimant's possession must be: (1) actual, (2) visible, (3) open, (4) notorious, (5) exclusive, (6) under a claim of ownership, (7) hostile, and (8) continuous for at least the statutory period of limitation.

*See:* IC 1971, 32-1-20-1 (Burns Code Ed.)
*Triplett* v. *Triplett* (1963), 135 Ind. App. 302, 193 N.E.2d 662;
*Milhon* v. *Brown* (1957), 127 Ind. App. 694, 143 N.E.2d 573, rehearing denied, 127 Ind. App. 694, 145 N.E.2d 307;
*Cooper* v. *Tarpley* (1942), 112 Ind. App. 1, 41 N.E.2d 640.

The general rule in Indiana is that the statute of limitations does not run against a remainderman until the termination of the intervening life estate (which in this case was 1973). *Chambers* v. *Chambers* (1894), 139 Ind. 111, 38 N.E. 334; *Haskett* v. *Maxey* (1892), 134 Ind. 182, 33 N.E. 358; *Luntz* v. *Greve* (1885), 102 Ind. 173, 26 N.E. 128; *Nicholson* v. *Caress* (1877), 59 Ind. 39.

IC 1971, 34-1-2-2 (Burns Code Ed.) bars actions to recover the possession of real estate not commenced within ten years of accruement. However, a remainderman has no right to possess the land until the life estate ends. Without an immediate right of possession, a remainderman is incapable of maintaining an ejectment action to recover the possession of real estate.

*See:* IC 1971, 32-6-1.5-1 (Burns Supp. 1975).

Chapter 147 of the Acts of 1935, and upon deeds of trust, on judgments of courts of record and for the recovery of the possession of real estate, within ten [10] years . . .

Thus, the rationale for the rule emerges from the unfairness inherent in impressing a limitation period for the recovery of real estate upon a person who lacks a remedy for its recovery.[5]

Although the life tenant's death provides the customary means for ending the life estate and conferring possessory rights upon the remainderman, the life estate may prematurely terminate if the life tenant disavows his current estate and claims a larger one instead. If the remainderman is properly notified, the life tenant's repudiation will extinguish the life estate and accelerate the remainderman's right to possession.

*See:* 3 Am. Jur. 2d Adverse Possession, § 226 (1962) ;[6] 112 A.L.R. 1042, at 1048 (1938).

The acquisition of a possessory right will then activate the statute of limitations against the remainderman.

The Claimant's position is that the Life Tenant repudiated her life tenancy in 1962 when she recorded a deed and affidavit claiming sole ownership in all the real estate and conveying title to him. (At that time she owned a life estate in

---

5. Or, as stated by Simes and Smith, *The Law of Future Interests,* (2d Ed.) § 1962:

"The underlying principle with respect to the running of the statute of limitations against the owner of a future interest is that the statute does not begin to run against such owner until he has a right of action to recover the possession. . . . Since the owner of a future interest, as a rule, has no right to possession, remedial or otherwise, he should not be penalized for his failure to bring an action which the law does not permit him to bring. Thus, if Blackacre was conveyed to A for life, remainder to B in fee, and X enters into adverse possession, the statute does not begin to run against B's remainder until A's life estate terminates."

6. "It is widely held that a life tenant can, under certain circumstances, hold the premises adversely to the remainderman or reversioner. To enable a life tenant to establish a possession in himself adverse to the remainderman or reversioner, however, it is generally held that the life estate must first be extinguished, as by a renunciation, repudiation, disavowal, disclaimer, or abandonment of that estate and all right of possession referable to it. It has been said that to establish an adverse possession in a life tenant an unequivocal ouster of the remainderman must be shown. The life tenant's conduct must demonstrate a clear purpose to infringe the remainderman's rights. Notice to the remainderman or reversioner of the hostile holding by the life tenant is essential." 3 Am. Jur. 2d § 226, at p. 322.

an undivided one-half of the eighty acres while holding title to the other half in fee simple.)[7] By virtue of such repudiation and his subsequent possession, Claimant maintains sufficient notice was given in 1962 to start the statute of limitations running against the Remaindermen . . . as they could have brought this action anytime during a ten year period from 1962 to 1972.

No Indiana court has specifically addressed itself to the kind of notice required to activate the ten year statute of limitations against a remainderman. Three views are prevalent among those jurisdictions which have considered this question.

*See:* 58 A.L.R.2d 299, at 309-312 (1958).

A few courts have found constructive notice by recordation sufficient to alert a remainderman of an adverse claim.

*See: Commonwealth* v. *Clark,* (1904), 119 Ky. 85, 83 S.W. 100.

Other courts have required the adverse possessor to prove the remainderman had actual knowledge of the impending claim.

*See: Bretschneider* v. *Farmers Nat. Bank of Madison* (1936), 131 Neb. 495, 268 N.W. 278; *Scott* v. *Fairlie* (1921), 81 Fla. 438, 89 So. 128; *Anderson* v. *Miller,* (1919), 103 Neb. 549, 172 N.W. 688; *Mitchell* v. *Vest* (1912), 157 Iowa 336, 136 N.W. 1054; *Anderson* v. *Northrop* (1892), 30 Fla. 612, 12 So. 318.

Closely allied to this second viewpoint is the majority rule which necessitates the giving of actual, as opposed to constructive, notice to the remaindermen.

*See: Copenhaver* v. *Copenhaver* (1957, Okla.), 317 P.2d 756; *Quarles* v. *Arthur* (1950), 33 Tenn. App. 291, 231 S.W.2d 589; *Lotspeich* v. *Dean* (1949), 53 N.M. 488, 211 P.2d 979; *Content* v. *Dalton* (1937), 122 N.J. Eq. 425, 194 A. 286, 112 A.L.R. 1031; *Griffin* v.

---

7. Clara's one-half interest in fee simple resulted from a merger of her life estate with the vested remainder she inherited from her son, Carl. *See: Abernathy* v. *McCoy* (1930), 91 Ind. App. 574, 154 N.E. 682; *Dibble* v. *Lloyd* (1920), 73 Ind. App. 320, 127 N.E. 453.

*Reynolds* (1937, Tex. Civ. App.), 107 S.W.2d 634; *Tillotson* v. *Hill* (1927, Tex. Civ. App.), 297 S.W. 603; *Combs* v. *Haley Coal Co.* (1921, C.A.6th Ky.), 276 F. 342; *McDowell* v. *Beckham* (1913), 72 Wash. 224, 130 P. 350; *Winters* v. *Powell* (1912), 180 Ala. 425, 61 So. 96.

The majority rule rejects constructive notice by recordation as inadequate because the remainderman should not be obliged to constantly inspect a deed registry to preserve his title. Recording acts it is said are designed to protect subsequent purchasers and incumbrances from a common grantor.[8] They impart constructive notice only to those who claim through or under the grantor in question.

*Accord: Maurer* v. *Reifschneider* (1911), 89 Neb. 673, 132 N.W. 197.

We find the majority view persuasive. The Remaindermen in this case claim their title through decedent Henry C. Niemann, not the Life Tenant, and therefore were not under a duty to search the record for her conveyance to the Claimant. The notice required must be actual, and the mere recording of a deed does not suffice.

See: *Pooler* v. *Hyne* (7th Cir., 1914), 213 F. 154, certiorari denied, 238 U.S. 620, 35 S.Ct. 603, 59 L.Ed. 1493.

---

8. § 110. Reversioners and remainderman.

"Since the registry acts are for the benefit of subsequent holders and not of prior holders, the record of conveyances by a life tenant will not, in general, in the absence of a statute to the contrary, charge the remainderman or reversioner with notice thereof. Thus, the recording of a deed by a life tenant to a third person will not ordinarily have the effect of making the grantee's possession adverse to the remainderman during the continuance of the life estate. The transferee of a reversion or remainder is charged with notice of leases which are of record and which are within his chain of title." 66 Am. Jur. 2d Records & Recordings § 110, (1962).

Indiana's recording statutes do not purport to charge remaindermen with notice of a life tenant's conveyances to third persons. IC 1971, 32-1-2-11 (Burns Code Ed.), and IC 1971, 32-1-2-16 (Burns Code Ed.). Among other objectives, our recording acts were intended to protect subsequent purchasers, lessees, and mortgagees by giving them notice of outstanding interests in real estate.

See: *Lincoln National Bank & Trust Co.* v. *Nathan* (1939), 215 Ind. 178, 19 N.E.2d 243; *C. Callahan Co.* v. *Lafayette Consumers Co.* (1936), 102 Ind. App. 319, 2 N.E.2d 994.

Nor, under the particular facts of this case, was the Claimant's possession of the eighty acres sufficient notice to the Remaindermen that Clara had repudiated her life tenancy. The life tenant is bound to take reasonable care to preserve and protect the property for the future enjoyment of the remainderman. *Kepert* v. *Kepert* (1922), 79 Ind. App. 633, 134 N.E. 297; *Gibson* v. *Brown* (1916), 62 Ind. App. 460, 110 N.E. 716, rehearing denied 62 Ind. App. 473, 112 N.E. 894.

Until a remainderman attains actual notice to the contrary, he is entitled to presume the life tenant and his grantees are holding the land in deference to the remainderman's future interest.[9] Particularly is this true in the facts before us as the Claimant (Piel) was the brother of the Life Tenant.

See: 3 Am.Jur.2d, Adverse Possession, § 225, (1962); *Pooler* v. *Hyne, supra.*

Thus we inevitably arrive at the conclusion that the mere execution and recording of a deed and affidavit by a life tenant asserting title contrary to the vested interest of remaindermen is not adequate notice to remaindermen of an adverse claim so as to activate the statute of limitations. The Claimant failed to carry his burden of proving adequate notice[10] of adverse claim to the Remaindermen during the life

---

9. As stated by the Tennessee court in *Quarles* v. *Arthur, supra* (at 593):

And the remainderman is not charged with the duty of keeping his estate under constant observation, *Anderson* v. *Miller*, 103 Neb. 549, 172 N.W. 688; nor is he charged with notice of a conveyance from the life tenant not appearing in his chain of title even though followed by possession by the grantee, *Ontelaunee Orchards* v. *Rothermel*, 139 Pa. Super. 44, 11 A.2d 543. The life tenant or his conveyee must not only disclose to the remaindermen the basis of his claim, *Superior Oil Corp.* v. *Alcorn*, 242 Ky. 814, 47 S.W.2d 973, but there must be some clear and positive overt act or express notice, *Trimble* v. *Gordon*, 270 Ky. 476, 109 S.W.2d 1217, 1219, to start the running of the statute. The reason underlying these holdings, we assume, is that the possession is not ipso facto inconsistent with the rights of the holders of the future estate. We think their reasoning is sound. See: *W. A. Cotney* v. *A. D. Eason* (1959), 269 Ala. 354, 113 So.2d 512.

10. The burden of establishing title by adverse possession falls affirmatively upon the asserter who must adduce proof which is strict, clear, positive, and unequivocal. *Milhon* v. *Brown, supra; Sheets* v. *Stiefel*

time of the Life Tenant, and the statute of limitations did not commence until the death of the Life Tenant in 1973.

## DECISION

ISSUE TWO:

CONCLUSION—It is our opinion the Remaindermen's partition action is not barred by the statute of limitations governing such actions, nor are they guilty of laches in asserting their claim.

The Claimant would defeat the Remaindermens' partition action on the basis that the fifteen years statute of limitations[11] barring such actions began to run in 1945 and expired in 1960, approximately 13 years before this action began.

According to the Claimant, the statute conferring the right on remaindermen to commence a partition action is IC 1971, 32-4-6-1 (Burns Code Ed.):

> Partition, fee simple and life estate.—When any person shall own and undivided interest in fee simple in any lands, and, at the same time, shall own a life estate in the remaining portion of any such lands, or any part thereof, then, in any such case, such person so owning such fee and life estate, or the person or persons owning the fee in such lands subject to such undivided interest in fee and such life estate in any such lands, may compel partition thereof and have such fee-simple interest in any such lands so held, set off and determined in the same manner as lands are now partitioned by law.

This statute abrogated the common law rule, which denied the right to seek partition to one not entitled to possession, by allowing the remainderman to maintain a partition action under certain specified circumstances. *See: Coquillard* v. *Co-*

---

(1947), 117 Ind. App. 584, 74 N.E.2d 921; *Coal Creek Coal Co.* v. *Chicago, T. H. & S. E. Ry. Co.*, (1944), 144 Ind. App. 627, 53 N.E.2d 179.

11. The statute of limitation for partition actions is IC 1971, 34-1-2-3 (Burns Code Ed.) which allows fifteen years to bring the action. See: *Waymire* v. *Waymire* (1895), 144 Ind. 329, 43 N.E. 267; *English* v. *Powell* (1889), 119 Ind. 93, 21 N.E. 458; *McCray* v. *Humes* (1888), 116 Ind. 103, 18 N.E. 500; *Nutter* v. *Hawkins* (1883), 93 Ind. 260.

*quillard* (1916), 62 Ind. App. 489, 113 N.E. 481; *Smith* v. *Andrew* (1912), 50 Ind. App. 602, 98 N.E. 734.

In assuming a right to partition in the Remaindermen, Claimant fails to grapple with the subtle but important distinction between when a right to partition exists and when the statute of limitations begins to run against the asserter of that right. *Jenkins* v. *Dalton* (1866), 27 Ind. 78, 80, 81, recognizes the distinction:

> In such a case, the right to the partition exists from the date of the tenancy. It may or may not be exercised, in the discretion of the tenants. All the tenants have an equal right to possession, and may all be satisfied to enjoy the estate in common. Partition may not be desired by any one or more of the tenants for a period of time greater than that prescribed by any statute of limitation; and the fact that such a period is suffered to elapse, does not in any manner affect the right of one or more of the tenants to have partition. *See: Nicholson* v. *Caress, supra.*

The factor that precipitates the running of the statute of limitations, is the *ouster* of one cotenant by another cotenant:

> The appellant says appellee's cause of action was barred by the statute of limitations. The right of cotenants to partition exists from the date of the inception of the tenancy. *The statute of limitations will not begin to run in favor of a cotenant in possession against a cotenant out of possession until there is an ouster of the latter by the former.* 1 Lowe's Rev., Works Indiana Practice, § 4.25, p. 96; 1 Am.Jur., Adverse Possession, § 57, p. 828. (emphasis supplied). *Hares* v. *Chisman* (1951), 230 Ind. 333, at 342, 101 N.E.2d 268, at 271.
>
> *See: Hegarty* v. *Curtis* (1950), 121 Ind. App. 74, at 88, 95 N.E.2d 706, at 712.

The rule requiring ouster by one cotenant of another in order to commence the statute of limitations would seem logically to apply with force equal between a tenant in possession and a mainderman given the right by statute (IC 1971, 32-4-6-1) to bring an action for partition.

The only evidence in the record to support a claim of ouster was the Life Tenant's affidavit and deed to Piel in 1962. Even

if this evidence were sufficient to commence the running of the fifteen year statute of limitations (IC 1971, 34-1-2-3 (Burns Code Ed.)), the Remaindermen would still have until 1977 to file a partition action.

The Claimant fares no better in charging the Remaindermen with laches. Something more than the mere passage of time is required:

> There are circumstances where "the laches of a party may be of such a character * * * as will bar his right to prosecute his action in less time than that fixed by the statute of limitations. But that is only in cases where the laches are of such a character, and under such circumstances, as to work an equitable estoppel." *Scherer* v. *Ingerman, Administrator,* 1887, 110 Ind. 428, 11 N.E. 8, 10, 12 N.E. 304. This court said in *New Albany Nat. Bank* v. *Brown,* 1916, 63 Ind. App. 391, 114 N.E. 486, 492: *"Laches implies something more than mere lapse of time; it requires some actual or presumable change of circumstances, rendering it inequitable to grant relief."* (emphasis supplied). *Hegarty* v. *Curtis* (1950), 121 Ind. App. 74, at 89, 90, 95 N.E.2d 706, at 712, 713.

There is no evidence in this record indicating any set of circumstances during the time in question rendering it inequitable for the Remaindermen to seek partition. They passively waited until the Life Tenant died and then asserted their rights. Nor was there any evidence that they were aware of the Claimant's adverse claim until the death of the Life Tenant.

The judgment of the trial court is therefore affirmed.

Affirmed.

White J. and Garrard, J., by designation, concur.

NOTE.—Reported at 351 N.E.2d 48.